262 So.2d 425 (1972)
Patricia K. BASSETT, and Kenneth Hopkinson, Joined by Mrs. Crutcher Harrison, Appellants,
v.
G. Holmes BRADDOCK et al., Appellees,
v.
DADE COUNTY CLASSROOM TEACHERS' ASSOCIATION, Inc., Intervenor Appellee.
No. 41315.
Supreme Court of Florida.
May 17, 1972.
William S. Frates, Larry S. Stewart and Jon I. Gordon, of Frates, Floyd, Pearson & Stewart, Miami, for appellants.
Frank A. Howard, Jr., Miami, for appellees.
Tobias Simon and Elizabeth J. duFresne, Miami, for intervenor appellee.
Robert L. Shevin, Atty. Gen., and Daniel S. Dearing, Chief Trial Counsel, Tallahassee, as amici curiae.
DEKLE, Justice.
We affirm on this direct appeal the findings and judgments of the learned chancellor. An injunction was sought by certain Dade County citizens as plaintiffs (appellants) against Appellees-Dade County School Board for alleged failure to comply with the so-called "Government in the Sunshine" law.[1] Dade County Classroom *426 Teachers' Assoc., Inc., was intervenor upon counterclaim for declaratory decree as to teachers' "collective bargaining" rights. The injunction was properly denied; the declaratory decree was correct as to "bargaining rights."
The principal issues are framed as follows:
1. Whether labor negotiators employed by the Board in preliminary or tentative teacher contract negotiations with the teachers' representatives may negotiate outside of public meetings without being in violation of the "Sunshine Law"?
2. Whether the Board may instruct and consult with its labor negotiators in private without such violation?
The appeal is from the chancellor's affirmative answers to these queries. We affirm.
The constitutional question vesting jurisdiction in this Court (Fla. Const. art. V, § 4(2)), F.S.A. relates to Fla. Const. art. I, § 6, which guarantees collective bargaining for employees.[2] See also this Court's expression thereon in Dade County Classroom Teachers' Assoc., Inc. v. Ryan, 225 So.2d 903 (Fla. 1969).
Implementing legislation unfortunately has not yet been passed to give guidance and meaning to this vital constitutional protection.[3] Public employees are also entitled to their place in the "sunshine". At the 1972 regular legislative session, which is the third since passage of this 1968 provision, proposals in this regard have again been considered without passage. It is to be hoped that this will in time reach fruition. Meanwile, however, this Court remains hesitant to allow itself to be propelled into "judicial implementation." For purposes of this appeal, therefore, we merely affirm the lower court's action in these respects. To do otherwise could well deny the public employees' rights to "bargain collectively" as guaranteed by Fla. Const. art. I, § 6. Such "intensity" of the "sunrays" under the statute, as urged by this appeal, could cause a damaging case of "sunburn" to these employees or to the public which elected the Board. It quite possibly would conflict with the protective umbrella of the constitutional guarantee of § 6.
Here we have a literal constitutional exception expressly provided within the Sunshine Law which states: "... except as otherwise provided in the constitution ... ." (emphasis ours) The "sunshine" of the statute is still afforded in the debate and adoption of the ultimate employment contract at a public meeting but with the constitutional polaroid filter from the damaging "ultra violet rays" of preliminary skirmishing.
The able chancellor's finding as to bargaining negotiations was based on impressive, uncontroverted testimony by respectable national authorities in the field, that meaningful collective bargaining in the circumstances here would be destroyed if full publicity were accorded at each step of the negotiations.[4] It would pit the public *427 body as a virtual "David" without benefit of "sling"[5] against the Goliath champion (negotiators) for 7,500 employees in this immediate case and over 200,000 employees who could be ultimately involved.
The public's representatives must be afforded at least an equal position with that enjoyed by those with whom they deal. The public should not suffer a handicap at the expense of a purist view of open public meetings, so long as the ultimate debate and decisions are public and the "official acts" and "formal action" specified by the statute are taken in open "public meetings."[6] This affords the adequate and effective protection to the public on the side of the "right to know" which was intended.[7]
The Board's employed attorney for the negotiations ("negotiator") was employed in public; he had no authority to bind the Board (and in fact his recommendations were later modified by the Board in open meetings); he made his report to the Board in public where the discussions were spirited and the ultimate vote was 4 to 3! Full consideration of the recommendations of the Board's negotiator was accordingly had in a public meeting and aired and voted upon in public. Those recommendations were in a sense simply the acorn from which the final contract grew  in the sunshine. There is no violation.
Appellants urge that the Act and our prior decisions compel public meetings for "not only formal acts, but also acts of deliberation, discussion and deciding, occurring, prior to and leading up to affirmative formal action." While conceding that our opinions have been as broad as possible to let in the sunshine under the Legislature's enactment, nevertheless a careful rereading of our opinions and the Act fail to support the foregoing contention. It was not specifically involved in our prior decisions which have dealt principally with "meetings" (some informal) of a board. We have in earlier opinions referred to "matters on which foreseeable action will be taken by the Board" and "any discussions on matters pertaining to the duties and responsibilities of the Board of Public Instruction of Broward County."[8] These are broad considerations but they still do not invade the areas of deliberation here involved, for it will be noted that in all of these observations by the Court, they are predicated upon a "meeting." Here the required action under the statutes was taken in a public meeting; changes were made and voting had, all in public. The discussions and deliberations, however, in an executive process often take place beyond the veil of actual "meetings" of the body involved. It is only in those "meetings" that official action is taken. Preliminary "discussions" may never result in any action taken. There may be numerous informal exchanges of ideas and possibilities, either among members or with others (at the coke machine, in a foyer, etc.) when there is no relationship at all to any meeting at which any foreseeable action is contemplated.[9] Such things germinate gradually *428 and often without really knowing whether any action or meeting will grow out of the exchanges or thinking.
Every action emanates from thoughts and creations of the mind and exchanges with others. These are perhaps "deliberations" in a sense but hardly demanded to be brought forward in the spoken word at a public meeting. To carry matters to such an extreme approaches the ridiculous; it would defeat any meaningful and productive process of government. One must maintain perspective on a broad provision such as this legislative enactment, in its application to the actual workings of an active Board fraught with many and varied problems and demands.
As to the second issue  the Board instructing its negotiator in private  it likewise follows that this is authorized on the same grounds and reasoning above. The "other side" (teachers' negotiator) is being "coached" and given advices privately and from time to time during the bargaining period; it is only common sense and fair play that "our team" have the same advantage in order to be effective in his efforts. It might be noted that in a case like the present where the negotiator is an attorney that certainly he is entitled to consult with the Board on matters regarding preliminary advices.[10] He is also thereby guided toward an effective result. It is not that appellees are "hiding" anything but simply trying to get the best "bargain" available for the public schools and not to be placed at a disadvantage in their efforts. It therefore follows that this is not in violation of the "Sunshine Law" for the Board to instruct and to consult with its labor negotiator in private without it being a violation of § 286.011.
We affirm also on the Board's cross-appeal, the final judgment that the election of the chairman and vice-chairman of the Dade County School Board was valid in the particular circumstances here. It was first by secret written ballot but was then unanimously by election upon motion and vote in open meeting. In this particular instance, any initial violation by secret written ballot was cured and rendered "sunshine *429 bright" by the corrective open, public vote which followed.
Affirmed.
CARLTON and McCAIN, JJ., and DREW, J. (Retired), concur.
ROBERTS, C.J., concurs specially with opinion.
ADKINS, J., dissents with opinion.
BOYD, J., dissents and agrees with ADKINS, J.
ROBERTS, Chief Justice (concurring specially).
I concur in the opinion and judgment of Mr. Justice Dekle. However, I note that there was apparently an informal secret straw ballot between the members as to the selection of a chairman with an obvious understanding that the result of the straw vote would be approved in an open formal meeting. Since the secret straw vote was an integral part in the selection of the chairman, the vote of the individual members at the informal straw poll should have been made public in the minutes.
ADKINS, Justice (dissenting):
I dissent. The questions involved in this litigation would never have arisen if the Legislature by statute had implemented the provisions of Fla. Const. art. I (Declaration of Rights), § 6, F.S.A., reading:
"The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike."
In limiting our consideration of this case solely to the powers of the judicial branch of government, we should only determine whether or not Fla. Stat. § 286.01 (government in the sunshine law), F.S.A., is applicable to collective bargaining by public employees.
Thus far the government in the sunshine law has withstood various attacks where a few misguided local boards and agencies have attempted to seek a means by which they could circumvent the law so as to resume secret meetings.
Appellees say that meaningful collective bargaining would be destroyed if full publicity were accorded at each step of the negotiations. It should be recognized that every taxpayer is an interested party in negotiations concerning the salaries to be paid public employees. The members of the school board are mere representatives of the public and any action taken by the school board is the action of the public.
We have previously defined a secret meeting in the following language:
"A secret meeting occurs when public officials meet at a time and place to avoid being seen or heard by the public. When at such meetings officials mentioned in Fla. Stat. § 286.011, F.S.A., transact or agree to transact public business at a future time in a certain manner they violate the government in the sunshine law, regardless of whether the meeting is formal or informal." City of Miami Beach v. Berns, 245 So.2d 38, 41 (Fla. 1971).
Also in Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969), we held that the statute was intended to cover any gathering dealing with some matter on which foreseeable action would be taken by the Board.
The statute does not make reference to the existence of a quorum, so that a meeting of any agency or authority of the Board may be a public meeting which should be open to the public at all times. The important question is not whether a quorum must be present, but whether the agency or authority of the Board deals with any matter on which foreseeable action may be taken by the Board.
*430 The right of the public to be present, to be heard, and to participate should not be circumvented by having secret meetings of various committees appointed by the Board and vested with authority to make recommendations or suggestions to the Board concerning a matter on which foreseeable action may be taken. It is true that during the early years of our democracy public officials felt that most meetings concerning governmental decisions should be secret, but they soon became aware that an enlightened public is the foremost safeguard for the continued existence of our form of government. It is even more important that local boards, subject to the immediate scrutiny of the local citizen, be required to conduct their meeting in the presence of those who will be directly affected by the decisions of the Board. This is a renovation of the "town hall meeting" where public officials were able to secure the benefit of the thoughts and ideas of those most interested in government  that is, the citizens who pay the taxes.
The government in the sunshine law prevents the Board from functioning secretly under the guise of small committees. If this were done, each member would have an opportunity to commit himself on some matter, on which foreseeable action will be taken, by expressing himself at a secret committee meeting in the absence of the public and without giving the public an opportunity to be heard. The ultimate action of the entire Board in public meetings would merely be an affirmation of the various secret committee meetings held in violation of the law.
There is testimony, and the trial judge held, that meaningful collective bargaining would be destroyed if full publicity were accorded at each step of the negotiations. Therefore, the trial judge held that the statute would be unconstitutional if applied to collective bargaining, as Fla. Const., art. I, § 6, F.S.A., guarantees the right to "bargain collectively." It is also said that the public's representative must be afforded at least an equal position with that enjoyed by those with whom they deal. Such reasoning overlooks the provision in the constitution which prohibits strikes by public employees, thereby removing the only weapon by which labor may insure good faith collective bargaining.
In other words, the constitution contemplates open collective bargaining in good faith without secrecy and without strikes. The standards of performance in bargaining collectively as contemplated in the National Labor Relations Act are discussed in The Law of Labor Relations, by Werne, at page 255.
"While the Act, as amended, defines the duty to bargain collectively, it leaves to the Board and to the courts the determination of what tests shall be applied for the purpose of ascertaining whether employers and unions are performing such duty. The standard of performance is said to be negotiation in good faith to the end that agreement shall be reached with respect to wages, hours and conditions of work, and reduction of the agreement to a signed contract for a fixed reasonable period. Mere gestures in such a direction do not constitute collective bargaining. Nor does the requirement that the employees submit a list of demands, which are either accepted or rejected without explanation, satisfy the requirements.
"The submission of proposals by a union or by an employer, with a `take-it-or-else' attitude, does not constitute collective bargaining. `Negotiations with an intent only to delay and postpone a settlement until a strike can be broken' are not collective bargaining.
"`Interchange of ideas, communication of facts peculiarly within the knowledge of either party, personal persuasion, and the opportunity to modify demands in accordance with the total situation thus revealed at the conference is of the essence of the bargaining process.'
"The nature of the good-faith requirement indicates that whether the standard *431 of performance is met will depend on the facts in each case where the issue is raised. The guide posts for performance and the manifestations of non-performance are considered in connection with refusals to bargain collectively."
The primary requirement is good faith. Certainly, negotiations in public would not detract from good faith bargaining. In fact, it may be said that bad faith emanates from closed doors. There is no case cited which requires that collective bargaining negotiation must be behind closed doors; therefore, for the Court to make this an exception to the government in the sunshine law would be legislation.
It is within the province of the Legislature, as a matter of policy, to determine whether collective bargaining should be an exception to the government in the sunshine law. I express no opinion on such a matter of public policy, but believe that it is not a violation of Fla. Const., art. I, § 6, F.S.A., to require such collective bargaining to take place in public at a public meeting.
In Board of Public Instruction of Broward County v. Doran, supra, we held that the statute did not authorize secret meetings on privileged matter. Under this decision the instructions to the negotiator should also be a matter of public concern. Even though this may, on its face, seem to give the negotiator for the teacher an unfair advantage, it will be necessary for him to bargain in good faith with full knowledge that his position cannot be enhanced by the use of the one weapon which ensures true collective bargaining in the classical sense, the strike. This puts each side on an equal footing so that public negotiation may result in benefits to the teachers, the Board, and the public. The Board is without benefit of secrecy and the teachers are without benefit of the threat of strike.
The further question appearing in this case was whether the secret ballot election of a School Board Chairman was made valid when the action was subsequently approved by the voice vote of the members at the same meeting.
Although in my judgment the election of the Chairman by secret ballot was contrary to the spirit and letter of the government in the sunshine law, the subsequent election of the Chairman by voice vote in this instance should not be upset. The reason for this view is that regardless of the prior violation of the statute, the Board members were at liberty to choose a Chairman of their choice by voice vote at a public meeting. This action should not be disturbed, although it may well be argued that it is the fruit of the illegal prior action.
BOYD, J., concurs.
NOTES
[1] Fla. Stat. § 286.011, F.S.A.: "Public meetings and records; public inspection; penalties.  (1) All meetings of any board or commission of any state agency or authority or of any agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting. (2) The minutes of a meeting of any such board or commission of any such state agency or authority shall be promptly recorded and such records shall be open to public inspection. The circuit courts of this state shall have jurisdiction to issue injunctions to enforce the purposes of this section upon application by any citizens of this state." (emphasis ours)
[2] "Section 6. Right to Work.  The right of persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike."
[3] We urged this in Dade Classroom Teachers' Ass'n., Inc. v. Ryan, 225 So.2d 903 (Fla. 1969).
[4] We quote with interest from "On Prior Restraint" by Paul A. Freund '31, published in the Harvard Law School Bulletin of August, 1971:

"The framers of the Constitution scrupulously maintained the secrecy of their deliberations in the convention of 1787. Madison's notes, the best record, were not published until his death, forty years later. Secrecy, it is fair to suppose, promoted free and candid debate within the convention, and vitally encouraged the shifts in voting, the great compromises, calculated ambiguities and deliberate lacunae that made possible in the end a masterful charter... ."
"The original Constitution contained no guarantee of freedom of speech, save for members of Congress, and none for the press. When the first Congress proposed the First Amendment, the Senate, it is worth remembering, sat in secrecy. For five years the Senate held its debates behind closed doors. Believing in the liberty of the press, at the same time the members believed it right to shield their own discussions from the public and disclose only the final actions taken."
[5] I Samuel 17:39-40.
[6] Fla. Stat. § 286.011.
[7] Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969); City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971).
[8] Id.
[9] Massachusetts has a "right-to-know" law. Massachusetts General Laws, Annot. Ch. 39, § 23A (Supp. 1969). An Attorney General opinion has held this law to be inapplicable to collective bargaining sessions conducted between negotiators.

"After careful considerations, I have concluded that this statute does not apply to collective bargaining sessions with school employees. The decisive point is that such sessions are not `meetings' within the meaning of that term in the statute. The meetings to which the statute refers are rather those in which the internal discussions, deliberations and voting of an agency are of public concern. A collective bargaining session, on the other hand, is a meeting at which the employer and employees are engaged in a process of an interchange and analysis of each other's proposals and counterproposals. This is a different kind of process from that involved in the conduct of an agency's internal deliberations or the making of its official decisions." Letter from State Attorney General to Commissioner of Education, Owen B. Kiernan, Sept. 12, 1967, p. 3.  As quoted from The Law and Practice of Teacher Negotiations by Wollett and Chanin, p. 4:2.
This is also the view of the Attorney General of Wisconsin, where the statute provides that no formal action of any kind may be introduced, deliberated upon, or adopted at any closed meeting of the school board. The Attorney General's informal opinion reads as follows:
"I believe it may be broadly stated that preliminary negotiations between a representative of a municipal employer and a representative of its employees are not subject to requirements of Sec. 14.90, Stats., (Anti-Secrecy Law), but that deliberations and adoption of any specific recommendation on the part of the municipality must comply with that statute. `School Board and Teacher Negotiations in Wisconsin Public Schools' at pp. 11-12, Wisconsin Assn. of School Boards, Winneconne, Wisconsin (1967)  as stated in Wollett and Chanin, supra."
[10] The Sacramento Newspaper Guild v. The Sacramento County Board of Supervisors, 263 Cal. App.2d 41, 69 Cal. Rptr. 480 (1968). cf. Times Publ. Co. v. Williams, 222 So.2d 470, 475-476 (2d DCA Fla. 1969).