279 So.2d 353 (1973)
IDS PROPERTIES, INC., a Nevada Corporation, Appellant,
v.
TOWN OF PALM BEACH, a Florida Municipal Corporation, et al., Appellees, (Two Cases).
TOWN OF PALM BEACH, Etc., et al., Appellants,
v.
Jules T. GRADISON, Appellee.
TOWN OF PALM BEACH, Etc., et al., Appellants,
v.
Fred GLADSTONE, Appellee.
TOWN OF PALM BEACH, Etc., et al., Appellants,
v.
FAIRMONT CONVERTING CO., INC., Etc., Appellee.
TOWN OF PALM BEACH, Etc., et al., Appellants,
v.
Morris LANSBURGH, As Trustee, Appellee.
TOWN OF PALM BEACH, Etc., et al., Appellants,
v.
Perry KAYE, Appellee.
TOWN OF PALM BEACH, Etc., et al., Appellants,
v.
Ralph H. SHERE et al., Appellees.
TOWN OF PALM BEACH, Etc., et al., Appellants,
v.
Walter PORANSKI et Ux., Appellees.
TOWN OF PALM BEACH
v.
FIRST BANK AND TRUST CO. OF BOCA RATON.
Nos. 71-1085, 72-79, 72-630 to 72-638.
District Court of Appeal of Florida, Fourth District.
May 30, 1973.
Rehearings Denied July 3, 1973.
Rehearings Denied July 6, 1973.
*354 James E. Weber of Burns & Weber, West Palm Beach, and Walter H. Beckham, Jr., and Robert Orseck, of Podhurst Orseck & Parks, Miami, for appellant-IDS Properties, Inc.
H. David Faust, of Burns, Middleton, Farrell & Faust, Palm Beach, and Chester Bedell, of Bedell, Bedell, Dittmar, Smith & Zehmer, Jacksonville, for appellees-Town of Palm Beach, etc., and others.
H.L. Cooper, Jr., of O'Connell & Cooper, West Palm Beach, for appellees-Gradison, Lansburgh, Kaye, Shere and others, and Poranski et ux.
Larry B. Alexander, of Jones, Paine & Foster, West Palm Beach, for appellees-Gladstone and Fairmont Converting Co.
Wallis E. Schulle, of Fisher, Prior, Pruitt & Schulle, West Palm Beach, and Ross, Hardies, O'Keefe, Babcock, McDugald & Parsons, Chicago, Ill., for appellee-First Bank and Trust Co. of Boca Raton.
MAGER, Judge.
These several appeals and cross-appeals have been consolidated because they all involve the identical issue, i.e., whether the Comprehensive Zoning Plan and Ordinance of the Town of Palm Beach was enacted in violation of Section 286.011, F.S., commonly known as the "Government in the Sunshine Law".
Appellant, IDS Properties, Inc., the owner of certain real property located in the Town of Palm Beach, applied for a building permit thereon, and when said permit was not issued, filed suit seeking to compel the Town to issue such permit. Among the various issues made by the pleadings was the question of whether the Town's new comprehensive zoning plan ordinance was invalid because of an alleged sunshine law violation in the method of enactment. In separate and unrelated lawsuits, certain other owners of property situated in the Town of Palm Beach sought declaratory and injunctive relief against the zoning ordinance, likewise attacking its validity on the bais of an alleged sunshine law violation (among other grounds). This particular issue was severed in the respective suits and consolidated for purposes of trial.
By a memorandum decision filed November 30, 1971, the trial court set forth its findings of fact from which it determined that the comprehensive zoning plan and ordinance had not been enacted in violation of the sunshine law. Thereafter, on January 14, 1972, the court entered an order on this memorandum decision by which the claims of violation of the Sunshine Law were stricken from the pleadings in the several cases. Out of an abundance of caution, IDS filed timely interlocutory appeals from each of these orders, being Cases Nos. 71-1085 and 72-79, respectively.
The property owners who had filed separate suits elected to proceed to final judgment on the remaining issues, which judgments were favorable to the property owners and from which the Town of Palm Beach has filed timely appeals. Because the appellees in each of those several appeals cross-assigned as error the trial court's interlocutory orders on the Sunshine Law issue, we ordered that these "cross-appeals" be consolidated with the IDS interlocutory appeals in order that we might resolve at one time the identical issue in these several cases.
The memorandum decision reflects that in October 1969 the Town of Palm Beach entered into a contract with a land planning firm for the purpose of preparing and submitting to the Town Council for consideration a proposed comprehensive zoning plan. The trial court observed that:
"... While neither state law nor the Town Charter mandated the appointment of a planning committee, said contract provided that the Professional Planner would meet and work with either a planning commission or the Town Council during the preparation of the plan."
*355 There was no Planning Commission in existence, but in due course five citizens of the Town were designated as a Citizens' Planning Committee, which group thereupon acted in an advisory capacity to guide the planners "to assure the plan produced would be consistent with the character, image and land use controls intended by the Town's citizens". In reference to this particular committee, the trial court found as follows:
"This was an ad hoc committee of local residents familiar with the character, historical background and desired future development of the town. It was the committee's function to transmit to the planner that information and to advise with it so that the eventual plan would be compatible with the known desires of the community. This committee of citizens, while influential in what the planner ultimately produced, was merely advisory as far as the planner, the zoning commission and the town council were concerned. They made no decision which bound either the zoning commission or the town council. Much of what the planning committee did with the planner could have been done by the town manager, or some of the town's staff, or the planner could have sought out citizens on its own initiative for advice and assistance in preparing the plan."
The court also found that the planning advisory committee never gave any notice of its meetings with the planner, nor were the meetings open to the public, nor were minutes taken; that the record was devoid of any showing that the ad hoc advisory committee had been appointed as a subterfuge to avoid the effect of the statute; that after the planners had produced a comprehensive zoning plan by and with the advice of the Citizens' Planning Committee, the plan was submitted to the Zoning Commission and noticed public hearings were held pursuant to charter and state statutes; and that subsequently, upon the Zoning Commission's recommendation to the Town Council, the latter body held full public hearings pursuant to law before the ordinance was ultimately approved and enacted by the Town Council.
The main thrust of appellant's contention is that notwithstanding the adoption of the zoning ordinance by the Zoning Commission and Town Council after public hearings such ordinance is invalid by reason of the fact that the activities of the Citizens' Planning Committee were in violation of the Government in the Sunshine Law; stated alternatively, appellants contend that the Government in the Sunshine Law applies to the Citizens' Planning Committee.
The Government in the Sunshine Law, F.S. 286.011, F.S.A., provides, in part, as follows:
"286.011 Public meetings and records; public inspection; penalties. 
(1) All meetings of any board or commission of any state agency or authority of any county, municipal corporation or any political subdivision, except as otherwise provided in the constitution, at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting.
(2) The minutes of a meeting of any such board or commission of any such state agency or authority shall be promptly recorded and such records shall be open to public inspection. The circuit courts of this state shall have jurisdiction to issue injunctions to enforce the purposes of this section upon application by any citizens of this state."
Our review of this Act and our understanding of the recent Supreme Court decisions construing legislative intent of such Act leads us to the conclusion that under the circumstances of this case the Government in the Sunshine Law applies to the activities of the Citizens' Planning Committee.
*356 Although, admittedly, the zoning plan was "born" when the Town Council (acting in the sunshine) voted upon the ordinance at a public meeting, the "conception", which is an inseparable part of the life-giving process, took place (in the dark) with the appointment of the Citizens' Planning Committee. The zoning ordinance was, therefore, not conceived eo instanti at the public meetings held by the Town Council and Zoning Commission. It was the product of the deliberations and actions of the Citizens' Planning Committee acting as the alter ego of the Town Council;[1] The action of the Citizens' Planning Committee was an indispensable requisite to and integral part of the "official acts" or "formal action" of the Town Council.
It is axiomatic that public officials cannot do indirectly what they are prevented from doing directly. Those to whom public officials delegate de facto authority to act on their behalf in the formulation, preparation and promulgation of plans on which foreseeable action will be taken by such public officials stand in the shoes of such public officials insofar as the application of the Government in the Sunshine Law is concerned.
The adoption of a comprehensive zoning plan and ordinance which undoubtedly will dramatically mold the future development of a town is "governmental action" of the highest magnitude. It would be ludicrous to invalidate the actions of a public body which are the result of secret meetings of that body or members thereof while at the same time giving approval to actions which result from the secret meetings of committees designated by such public body. To recognize this double standard is to defeat "the right of the public to be present and to be heard during all phases of enactments ...". Jones v. Tanzler, Fla. 1970, 238 So.2d 91.
The special concurring opinion of Mr. Justice Adkins in Jones v. Tanzler, supra, reflects a factual circumstance somewhat analogous to the case sub judice, at p. 93:
"Defendants also contend that this was a gathering which the Mayor had in the exercise of his executive capacity with a group of councilmen who could only recommend action at that point of the Council as a whole. Defendant contends that as Chief Executive, the Mayor had the right to meet at any time with key members of the Council.
"The allegations are to the effect that the members of the Council as well as the Finance Committee met for the purpose of taking action on matters which would be presented to the Council in the foreseeable immediate future. From the allegations, it appears that the recommendation of the Finance Committee was one phase of the subsequent enactment of the ordinances by the Council. The right of the public to be present and to be heard should not be circumvented by having secret meetings of various committees composed of members of the Council and vested with authority to make recommendations to the Council.
* * * * * *
"Defendants next contend that the action of these officials in secret meetings could in no way invalidate the ultimate action taken by the 19-member City Council in the enactment of ordinances in accordance with all of the requirements of the City Charter and passed in the ordinary legislative process.
"Following this reasoning, any Council could divide itself into groups of small committees and each councilman would *357 have an opportunity to commit himself on some matter on which foreseeable action will be taken by expressing himself at a secret committee meeting in the absence of the public and without giving the public an opportunity to be heard. The ultimate action of the entire Council in public meeting would merely be an affirmation of the various secret committee meetings held in violation of the Government in the Sunshine Law." (Emphasis added.)
It should be pointed out that the application of the Government in the Sunshine Law is not dependent upon the good intentions, sincerity of purpose or noble motives of the public body when it proceeds to act in the shade. The gravamen is the doing of the very act itself rather than the motivation for the doing of the act. The determination of the applicability of the Sunshine Law is therefore not ascertained by whether the establishment of the Citizens' Planning Committee was a "subterfuge to avoid the effect of the statute".
In an effort to demonstrate the inapplicability of the Sunshine Law it is urged that the Citizens' Planning Committee, when it met in the shade, had no authority to do more than make a recommendation to the Town Council and that it was the formal action of the Town Council at the public hearing which is controlling; since the adoption of the zoning ordinance occurred by the "formal" action at meetings which were open to the public, there was compliance with the Sunshine Law. We cannot agree. Had the Town Council, itself, undertaken to met informally or in private for the purpose of formulating a comprehensive zoning plan which it would ultimately adopt in public, there can be no doubt that the actions of the Town Council would have violated the Government in the Sunshine Law and the subsequent ordinance invalidated; under those circumstances the public officials would have been gathering to deal with some matter on which "foreseeable action" would be taken. Board of Public Instruction of Broward Co. v. Doran, Fla. 1969, 224 So.2d 693. City of Miami Beach v. Berns, Fla. 1971, 245 So.2d 38. We fail to see any material distinction insofar as the application of the Sunshine Law is concerned between a formal meeting of the Town Council (or any members thereof) where a comprehensive zoning plan is being formulated and an informal meeting of the Citizens' Planning Committee conducted for the same purpose  both gatherings unmistakably dealt with some matter on which "foreseeable action" would be taken and in fact was taken. Board of Public Instruction of Broward Co. v. Doran, supra, and City of Miami Beach v. Berns, supra.
While it is true that the "formal action" occurred when the Town Council publicly adopted a zoning ordinance it is equally true that the "official acts" of the Town Council were reflected by the appointment of the Citizens' Planning Committee and through the subsequent meetings and deliberations of the Citizens' Planning Committee. It is these "official acts" (as well as the "formal action") that the legislature intended should be open to the public. In Times Publishing Co. v. Williams, Fla. App. 1969, 222 So.2d 470, 473-474, the distinction between "official acts" and "formal action" was aptly recognized:
"Every thought, as well as every affirmative act, of a public official as it relates to and is within the scope of his official duties, is a matter of public concern; and it is the entire decision-making process that the legislature intended to affect by the enactment of the statute before us. This act is a declaration of public policy, the frustration of which constitutes irreparable injury to the public interest. Every step in the decision-making process, including the decision itself, is a necessary preliminary to formal action. It follows that each step constitutes an `official act,' and indispensable requisite to `formal action,' within the meaning of the act.

"We think then that the legislature was obviously talking about two different *358 things by the use of these phrases, and we can't agree with appellee that `official acts' are limited to `formal action,' or that they are synonymous. Clearly the legislature must have intended to include more than the mere affirmative formal act of voting on an issue or the formal execution of an official document. These latter acts are indeed `formal,' but they are matters of record and easily ascertainable (though perhaps ex post facto), notwithstanding such legislation; and indeed the public has always been aware sooner or later of how its officials voted on a matter, or of when and how a document was executed. Thus, there would be no real need for the act if this was all the framers were talking about. It is also how and why the officials decided to so act which interests the public. Thus, in the light of the language in Turk, supra [Turk v. Richard, Fla., 47 So.2d 543], and of the obvious purpose of the statute, the legislature could only have meant to include therein the acts of deliberation, discussion and deciding occurring prior and leading up to the affirmative `formal action' which renders official the final decisions of the governing bodies." (Emphasis added.)
The recent decision of the Supreme Court in Bassett v. Braddock, Fla. 1972, 262 So.2d 425, construing the Sunshine Law as it relates to private labor negotiations in furtherance of the collective bargaining rights of public employees is distinguishable. The court found that Section 6, Article I, Declaration of Rights of the Florida Constitution, F.S.A., controlled the collective bargaining procedures rather than the provisions of the Government in the Sunshine Law. It is interesting, however, to note that Mr. Justice Adkins, who authored the opinions of the Court in City of Miami Beach v. Berns, supra, and Board of Public Instruction of Broward Co. v. Doran, supra, dissented from the majority decision in Bassett. The following observations from Justice Adkins' dissent illustrate the thrust of this court's position:
"The right of the public to be present, to be heard, and to participate should not be circumvented by having secret meetings of various committees appointed by the Board and vested with authority to make recommendations or suggestions to the Board concerning a matter on which foreseeable action may taken... ." (262 So.2d 425, 430).
The most recent decision of the Supreme Court in Canney v. Board of Public Instr. of Alachua Co., 278 So.2d 260, opinion filed April 6, 1973, (written by Mr. Justice Adkins) is further evidence of the solidarity of the Government in the Sunshine Law and the refusal of the Court to engraft exceptions upon its application. In declaring that even quasi-judicial actions of a school board are subject to the Sunshine Law and in vacating the actions taken by the board in executive session, the Supreme Court observed:
"Various boards and agencies have obviously attempted to read exceptions into the Government in the Sunshine Law which do not exist. Even though their intention may be sincere, such boards and agencies should not be allowed to circumvent the plain provisions of the statute. The benefit to the public far outweighs the inconvenience of the board or agency. If the board or agency feels aggrieved, then the remedy lies in the halls of the Legislature and not in efforts to circumvent the plain provisions of the statute by devious ways in the hope that the judiciary will read some exception into the law."
A reading of the decisions construing the Sunshine Law reflects the concern the legislature has for the public's right to know and be present at "every step in the decision-making process" and "during all phases of enactments". The adoption of the zoning ordinance in question was, in our view, tainted by the previous "steps in the dark" as evidenced by the appointment of and deliberations by the Citizens' Planning Committee which admittedly never gave notice of its meetings nor conducted *359 public meetings. As the appellant quite aptly observed:
"The Planning Commission, of course, was appointed like a public body, performed the functions of a public body  and indeed was one; whether viewed as a Planning Commission under the Florida Statutes, the Town Charter, and the contract, or whether viewed as an element of the Zoning Commission, or indeed as a Town Council Commission. It was one of these for sure. And if even functions of a public body were designed for public airing, the work of this Committee was. Public hearings after the intricate development of the Zoning Plan and Ordinance here were meaningless. The Council and later the Zoning Commission, of course, assisted in the preconceived adoption and enactment in at least several clear-cut in the shade meetings on the subject. If the Sunshine Law has any meaning at all, it is applicable here."
The Sunshine Law does not provide for any "government by delegation" exception; a public body cannot escape the application of the Sunshine Law by undertaking to delegate the conduct of public business through an alter ego. As the Supreme Court of Florida observed in City of Miami Beach v. Berns, supra, 245 So.2d at p. 41:
"It is the law's intent that any meeting, relating to any matter of which foreseeable action will be taken, occur openly and publicly.
"In this area of regulating, the statute may push beyond debatable limits in order to block evasive techniques. An informal conference or caucus of any two or more members permits crystallization of secret decisions to a point just short of ceremonial acceptance."
We find that the Sunshine Law was applicable to the activities of the Citizens' Planning Committee. Nothing in this decision should be construed as impugning the motives or intentions of the members of the Town Council in the procedure leading up to the adoption of the zoning ordinance. We simply find that the zoning ordinance in question was adopted in violation of the Sunshine Law and hence is invalid.
Accordingly, the order on the memorandum decision is reversed. In the interlocutory appeals brought by IDS Properties, Inc., as appellants, our mandate will issue in the usual course. In the remaining appeals (in which the foregoing issue was raised by the respective appellees by cross assignment of error) our mandate will issue only after disposition of the remaining issues raised in the respective appeals.
WALDEN, J., concurs.
OWEN, J., dissents, with opinion.
OWEN, Judge (dissenting):
In language so clear and simple as seemingly to defy judicial tinkering or misconstruction, the legislature has said[1] that "all meetings of any board ... of any ... municipal corporation ... at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting."
The validity of the zoning ordinance is the question before this court, not the validity of the planning commission. If we assume that the latter body was not legally constituted and that its actions failed to comply with the requirements of the Sunshine Law, what has such to do with the validity of the comprehensive zoning ordinance? The answer, plain on the face of the statute, nothing whatsoever. The Town Council was the only body authorized by law to enact the zoning ordinance. *360 It did so only after full public hearing pursuant to notice, which hearing extended over a period of approximately six days with all of its deliberations and voting in public. It was considering and acting upon a comprehensive zoning plan, the adoption of which had been recommended by the Zoning Commission, only after the latter body had held five days of public hearings on the proposed comprehensive zoning plan before approving it with certain changes. All parties agree that the meeting of the Town Council at which the zoning ordinance was enacted was a public meeting open to the public at all times in full compliance with the statute. This was the only meeting at which official action was taken to enact the ordinance into law.
When the matter was fully and fairly publicly aired and voted upon at the public meeting, the statutory requirement was satisfied, without regard to preliminary discussion or deliberation held prior thereto. The majority suggest, metaphorically, that while the zoning plan was "born" in the sunshine, it was conceived in the dark. So what. The courts may condemn such, but the legislature clearly didn't.
The statute provides a sanction for its violation, i.e., no resolution, rule, regulation or formal action shall be considered binding except as taken or made at such meeting. So, the action of the Citizens' Planning Committee was not binding. Who claims it was ? Certainly not the Town of Palm Beach. In full recognition of the fact that the action of the Citizens' Planning Committee was not binding, a proposed comprehensive zoning plan was first submitted to the Zoning Commission which held public hearings, and then the matter was referred to the Town Council which again held public hearings. It was the official action of the latter body by which the ordinance was enacted, and no one has yet to suggest that this official action was taken in violation of the statute. In my opinion the trial court's order should be affirmed on the authority of Bassett v. Braddock, Fla. 1972, 262 So.2d 425, with which the decision reached by the majority clearly conflicts.

ON PETITION FOR REHEARING
Ordered that appellees Petition for Rehearing, filed June 13, 1973, and the July 2, 1973 Amendment is hereby denied, and further,
Ordered that the following question passed upon in this court's opinion filed May 30, 1973, is certified to the Supreme Court of Florida as a question of great public interest, to wit;
"Whether a zoning ordinance adopted by zoning authorities and the Town Council after public hearings is rendered invalid under the § 286.011, F.S. 1971 [F.S.A.], Government in the Sunshine Law, because of the non-public activities of a citizen's planning committee which committee was established by the town council and acting on behalf of the council in an advisory capacity participated in the formulation of the zoning plan."
NOTES
[1] The memorandum decision reflects that the contract between the Town Council and the Professional Planner providing that the Professional Planner "would meet and work with either a planning commission or the Town Council during the preparation of the plan."
[1] F.S. Section 236.011(1), F.S.A. 1971.