462 So.2d 821 (1985)
Howard NEU, Mayor; Robert Lippelman, James Devaney, Diane Lord Brannen and John A. Hagerty, As Members of the North Miami City Council, Petitioners,
v.
MIAMI HERALD PUBLISHING COMPANY, Intervenor/Respondent, and
State of Florida ex rel. Janet Reno, As State Attorney for the Eleventh Judicial Circuit of Florida, and As a Citizen of the State of Florida, Respondents.
No. 64151.
Supreme Court of Florida.
January 17, 1985.
*823 Thomas Martin Pflaum of Simon, Schindler & Hurst, Miami, for petitioners.
Parker D. Thomson and Sanford L. Bohrer of Thomson, Zeder, Bohrer, Werth, Adorno & Razook, and Richard J. Ovelmen, Gen. Counsel, Miami, for The Miami Herald Pub. Co.
Thomas K. Petersen, Chief Asst. State Atty., Miami, for State of Florida ex rel. Janet Reno, State Atty.
Gerry Hammond and Joslyn Wilson, Asst. Attys. Gen., Tallahassee, amicus curiae, for the State of Fla. ex rel. Jim Smith, Atty. Gen.
James R. Wolf, Gen. Counsel, Tallahassee, amicus curiae, for Florida League of Cities.
Robert M. Rhodes, H. Michael Madsen and Kent R. Putnam of Messer, Rhodes & Vickers, Tallahassee, amicus curiae, for Florida School Bds. Ass'n, Inc.
PER CURIAM.
The district court below certified its decision as one passing on a question of great importance. State ex rel. Reno v. Neu, 434 So.2d 1035 (Fla. 3d DCA 1983). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The state attorney and the Miami Herald sought a declaratory judgment that a proposed meeting between the city council and its attorney to discuss pending litigation was subject to the open meeting provisions of the Sunshine Law, section 286.011, Florida Statutes (1981). Relying on Bassett v. Braddock, 262 So.2d 425 (Fla. 1972), the trial court concluded that the proposed meeting was neither official nor formal action under section 286.011 and, thus, there was no requirement that the meeting be open to the public. On appeal, the district court reversed, relying on Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969) and City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971) as being directly on point. The district court distinguished Bassett on the basis that it dealt with a different question arising under a constitutional exception to the Sunshine Law. The district court also rejected the argument that the attorney-client privilege provisions of the Florida Evidence Code, section 90.502, Florida Statutes (1981), granted an exception for closed meetings because, in the court's view, section 286.011(1) limited exceptions to the Sunshine Law to those created by the constitution. Because of the continuing significance of the issue, the court certified the following question of great public importance:
Whether the Sunshine Law applies to meetings between a City Council and the City Attorney held for the purpose of discussing the settlement of pending litigation to which the city is a party.
State ex rel. Reno, 434 So.2d at 1036. We answer the question affirmatively and approve the decision of the district court.
Before turning to the dispositive questions, we dispose of two peripheral questions which have been raised. First, the city council devised a procedure whereby representatives of the press and the state attorney, among others, were to be admitted to the meeting and a record maintained which would later be released to the public. The representatives attending the meeting would be pledged to respect the confidentiality of the cases discussed in the meeting until the cases had been resolved. Whatever merits there may be in this procedural attempt to compromise the competing values between open meetings and private discussion with an attorney, the procedure has no legal impact. Under the Sunshine Law, a meeting is either fully open or fully closed; there are no intermediate categories.
Second, the district court opinion suggests that in enacting the Sunshine *824 Law the legislature, by the use of the words "except as otherwise provided in the constitution," established a requirement that future legislatures could not establish statutory exceptions to the open meeting requirements of the Sunshine Law. This is, of course, incorrect. A legislature may not bind the hands of future legislatures by prohibiting amendments to statutory law. Straughn v. Camp, 293 So.2d 689, 694 (Fla.), appeal dismissed, 419 U.S. 891, 95 S.Ct. 168, 42 L.Ed.2d 135 (1974); Tamiami Trail Tours, Inc. v. Lee, 142 Fla. 68, 194 So. 305 (1940); Sovereign Camp Woodmen of the World v. Lake Worth Inlet District, 119 Fla. 782, 161 So. 717 (1935); Kirklands v. Town of Bradley, 104 Fla. 390, 139 So. 144 (1932).
Turning now to the dispositive questions, the trial court concluded, and petitioners urge, that our decision in Bassett creates an exception to the Sunshine Law permitting governmental bodies to meet privately with their attorneys to discuss pending litigation. In Bassett we held that an attorney representing a governmental body could meet privately with employee representatives to negotiate a collective bargaining agreement, and that the governmental body could meet privately with its attorney representative to instruct and consult on the negotiations. We agree that much of our rationale in Bassett would appear to support the proposition that private consultations are permitted with attorneys representing governmental bodies in pending litigation. Indeed, we went so far as to comment that "where the negotiator is an attorney that certainly he is entitled to consult with the Board on matters regarding preliminary advices." Bassett, 262 So.2d at 428 (emphasis in original). Despite the broadness of such language, our decision was restricted to and rested on what we saw to be a constitutional exception to the Sunshine Law, to wit: the article I, section 6 right of public employees to bargain collectively.
Petitioners urge that opening up the consultation of the governmental body with its attorney to its adversary in pending litigation gives the adversary an unfair advantage which can be used to secure unmerited or excessive judgments or settlements against the public. There is a good deal of wisdom in petitioners' argument but, as will be made clear below, we have no constitutional or statutory authority to create an exception to the Sunshine Law for governmental bodies to meet privately with their attorneys to discuss pending litigation.
Petitioners next urge that section 90.502, Florida Statutes (Supp. 1976) created an attorney/client privilege whereby governmental bodies may meet privately with their attorneys. Although we agree that the legislature has the authority to exempt such meetings from the Sunshine Law, we do not agree that it has done so. Section 90.502(1)(c) provides that "[a] communication between lawyer and client is `confidential' if it is not intended to be disclosed to third persons... ." The Law Revision Council Note to section (1), Florida Statutes Annotated 90.502 (1979), comments that "[w]hen the communication is made in public ... the intent to keep the communication confidential is lacking and the privilege cannot be claimed." The Sunshine Law explicitly provides for public meetings; communications at such public meetings are not confidential and no attorney/client privilege can arise therefrom. Our conclusion is supported by the later unsuccessful attempt of the legislature to enact House Bill 1107 (HB 1107) in the 1977 legislative session. Section 8 of HB 1107 provided that governmental bodies could meet privately with their attorneys to discuss pending litigation. However, the Governor vetoed HB 1107 and that veto was sustained. In his veto message to the legislature, Governor Askew indicated that he approved most of the contents of HB 1107, but so strongly disapproved of the exception to the Sunshine Law for discussions with attorneys that he was constrained to veto the bill. As it pertains to this point, the significance of section 8 of HB 1107 is that it clearly indicates that the legislature, despite petitioners' argument to the contrary, *825 did not intend by its earlier enactment of section 90.502 to create an exception to the Sunshine Law for attorney/client meetings. If it had so intended, HB 1107 would have been a pointless act. In construing legislation, courts should not assume that the legislature acted pointlessly. Sharer v. Hotel Corp. of America, 144 So.2d 813, 817 (Fla. 1962).
Petitioners next urge, alternatively, that reading section 286.011 to deny them a right to private meetings with their attorney places section 286.011 in conflict with Florida Bar Code of Professional Responsibility, Disciplinary Rule 4-101 and Ethical Consideration 4-2, and infringes on the constitutional authority of this Court under article V, section 15, Florida Constitution to regulate the practice of law. Petitioners cite Times Publishing Co. v. Williams, 222 So.2d 470 (Fla. 2d DCA 1969), in support. We disagree and disapprove that portion of Times Publishing Co. which holds that the legislature is without authority to regulate the relationship of public bodies with their attorneys. We note first that Disciplinary Rule 4-101 and Ethical Consideration 4-2 both provide that an attorney may divulge communications with his client when required by law. Further, as we noted above, there are no confidential communications to protect when the communications occur in a public meeting. Finally, the attorney/client privilege belongs to the client, not the attorney. The legislature has plenary constitutional authority to regulate the activities of political subdivisions and can require, as it has done in section 286.011, that meetings be open to the public. The attorney's right to invoke the attorney/client privilege is derivative of the client's right to that privilege. Under the circumstances, it would truly be a case of the tail wagging the dog to hold that an attorney, or this Court, could require closed meetings of public bodies, contrary to statutory law, based on the Code of Professional Responsibility.
Petitioners also urge that they have a due process right under the fourteenth amendment to the United States Constitution to privately consult with their attorney. We will not make any sweeping pronouncements on the distinction between due process rights of governmental entities and private persons. It is enough to say that the legislature has the power to require open meetings and that petitioners' argument has been rejected by the United States Supreme Court. Williams v. Mayor of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933).
Petitioners' broadest argument, and the one most fervently pressed, is that this Court's decisions in Doran and Berns have effectively strangled the political process in Florida and forced political bodies and officials to evade the Sunshine Law, as interpreted, in order to make the political process function. On this point, petitioners' arguments go beyond the issue here of consultations with attorneys on pending litigation to ask that we recede completely from Doran and Berns. Essentially, petitioners would have us read section 286.011 narrowly and hold that it applies only to the climatic meetings where official actions and acts are approved by the governing body. We have recently articulated why we will not adopt such a reading in Wood v. Marston, 442 So.2d 934 (Fla. 1983), and will not repeat the reasons here. One can argue and reargue whether the broad reading of the Sunshine Law in Doran and its progeny is politically wise.[*] The fact remains *826 that Doran was rendered fifteen years ago and placed the legislature and all concerned on notice of our broad reading of section 286.011. Doran has not been overruled by amendment to section 286.011 and petitioners have not presented a persuasive argument that we should overturn countless decisions broadly reading section 286.011. As we said in Wait v. Florida Power & Light Co., 372 So.2d 420, 424 (Fla. 1979):
This argument should be addressed to the legislature. Courts deal with the construction and constitutionality of legislative determinations, not their wisdom. In this case, we are confined to a determination of the legislature's intent.
The certified question is answered in the affirmative and the decision of the district court approved.
It is so ordered.
BOYD, C.J., and ADKINS, EHRLICH and SHAW, JJ., concur.
OVERTON, J., concurs specially with an opinion, in which EHRLICH, J., concurs.
McDONALD, J., dissents with an opinion, in which ALDERMAN, J., concurs.
OVERTON, Justice, concurring specially.
I concur specially to emphasize that we are construing the Sunshine Law, section 286.011, Florida Statutes (1981), as it applies to meetings of boards, commissions, or authorities of counties, municipalities, and political subdivisions of this state where official acts are taken. This Court has previously distinguished the actions of such bodies from the acts of governmental executive officers. See Wood v. Marston, 442 So.2d 934 (Fla. 1983); Occidental Chemical Co. v. Mayo, 351 So.2d 336 (Fla. 1977); Bennett v. Warden, 333 So.2d 97 (Fla. 2d DCA 1976). See also Wood v. Marston, 442 So.2d at 942 (Overton, J., concurring). Section 286.011 does not apply to executive officers and there is no violation of the Sunshine Law, as it is presently written, when a conference occurs between an attorney and a government executive, e.g., the governor, a county or city manager, a mayor where he is the chief executive officer of a municipality, or an agency executive officer.
EHRLICH, J., concurs.
McDONALD, Justice, dissenting.
I would answer the certified question in the negative. One of the oldest privileges existing in this country is the attorney-client privilege. See Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Its purpose is to allow open and uninhibited discourse between the attorney and the client. There was no specific modification of this time-honored concept in the enactment of the Sunshine Law. We should not hold that this doctrine was overruled by implication. I do not consider Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969), and City of Miami v. Bernard, 254 So.2d 38 (Fla. 1971), as controlling or being on point. Neither dealt with the time-honored recognition of the confidential nature of the attorney-client privilege. I can conceive of no public policy reasons to extend the Sunshine Law to govern communications between a public body and its attorneys concerning litigation in which the public body is a party. I do not believe it was the original intent of the legislature to abrogate the attorney-client confidentiality rule. Subsequent abortive attempts to amend the Sunshine Law initiated after a perception of how this Court viewed such consultations does not justify a conclusion that the legislature initially felt that attorney-client communications were public.
Both the Evidence Code, passed by the legislature and adopted as a rule of this Court, In re Florida Evidence Code, 372 So.2d 1369 (Fla.), as clarified, 376 So.2d 1161 *827 (Fla. 1979), and the Code of Professional Responsibility recognize the continued viability of the confidential attorney-client relationship. The legislature, in enacting the Sunshine Law, has not disturbed this relationship; it still extends to all, including public bodies.
ALDERMAN, J., concurs.
NOTES
[*] We have no interest in nor responsibility for debating political questions. Our interest in Governor Askew's veto message on HB 1107 is a legal one. Nevertheless, we would point out that Governor Askew, who could be fairly described as a successful, practicing politician, does not share petitioners' view that a broad reading of the Sunshine Law is politically unwise:

I am not unappreciative of the fact that there is some merit to permitting public bodies to meet privately with their attorneys, but the potential for abuse outweighs the potential benefit. Public agencies in Florida have managed to survive for ten years without holding secret meetings with their attorneys. There is no reason to think that they should not be able to survive many more. While this may cause some inconveniences in the short run, certainly we have discovered in this state that it is far better in the long run to conduct public business in the "sunshine." The public trust and the public confidence that are fostered by free and open government proceedings far outweigh any possible benefits that might be derived from Section 8 of this bill.
Journal of the House of Representatives 3 (Dec. 13, 1977).