514 So.2d 408 (1987)
CITY OF FORT MYERS, Appellant,
v.
NEWS-PRESS PUBLISHING COMPANY, INC., d/b/a Fort Myers News Press, Appellee.
No. 86-1972.
District Court of Appeal of Florida, Second District.
October 28, 1987.
*409 William E. Sizemore of Thompson, Sizemore & Gonzalez, P.A., Tampa, for appellant.
Steven Carta of Simpson, Henderson, Savage & Carta, Fort Myers, for appellee.
DANAHY, Chief Judge.
In this appeal the City of Fort Myers, the appellant, contends that once an impasse in collective bargaining is declared pursuant to the Public Employee Relations Act (PERA),[1] Florida's "Sunshine Law"[2] no longer applies to the ongoing bargaining process between the City's bargaining representative and the bargaining representative for the employees' unions. The trial judge disagreed with that contention and held that section 447.605(2), Florida Statutes (1985), required that the continuing meetings held after impasse to resolve the disputed issues be held in the "sunshine." We agree with the trial judge and affirm his order which granted injunctive relief to the appellee, News-Press Publishing Company, Inc.
The facts of this case are not in dispute. During 1985 the City's collective bargaining contracts with its police union and its general employees' union were being renegotiated. Prior to each negotiating session the City posted notice of the meetings on the City's calendar at City Hall. This calendar is specifically used to post public notice of meetings. Additionally, the City's representatives usually communicated directly with the appellee's reporters concerning such meetings. One reporter in particular attended several of the negotiating sessions.
The City and the police union were unable to agree on a wage level as well as a few other minor economic matters for the new contract. The City and the police union declared that negotiations were at an impasse and, pursuant to procedures of chapter 447, Florida Statutes (1985), a special master was appointed to hear the dispute.[3] The special master scheduled the *410 hearings to be held on December 10 and 11, 1985.
On December 9, the eve of the special master hearing for the police union, the attorney who was the representative leading the City's bargaining team contacted his counterpart, also an attorney, on the police union's team and arranged a meeting between the representatives for both sides to be held at 7:00 p.m. in a conference room at City Hall. No notice was posted, the appellee was not notified, and no media representatives were noticed or attended. The stated purpose of the meeting was an attempt to settle the terms and conditions of the employer-employee relationship which had caused the impasse.
The meeting was futile. The City presented a take-it-or-leave-it proposal with the condition that if this proposal were rejected, no mention of it was to be made at the next day's special master hearing. The police union rejected the settlement offer, and the parties anticipated the next day's hearing based on the City's last negotiation proposal, not the final offer of December 9.
The City had posted public notice of the special master hearing which was convened on the morning of December 10. The appellee's reporter and other media representatives were present.
Shortly after the special master convened the hearing, the police union's representative requested a recess so that the City's representative could step out into the hall to speak with him. The appellee's reporter, covering his first special master hearing, did not follow the attorneys as they left the conference room. Out in the hall, the union's representative offered another settlement proposal which the City's representative accepted. The two representatives agreed not to reveal the terms of the settlement offer until the following day. The purpose of this agreement was to avoid prejudice to the City by the special master knowing the terms of the agreed contract since that same master was to hear the general employees' dispute the next day. The police union also wanted the opportunity to present the settlement to its membership for ratification.
The two bargaining representatives reentered the conference room and announced to the special master that a settlement had been reached. The special master adjourned the proceedings but retained jurisdiction in the event of a later disruption regarding the settlement. The appellee's reporter next asked the two representatives to tell him the terms of the settlement. Both declined, citing the need for confidentiality.
The next day the special master proceedings began with the general employees' dispute with the same special master presiding. Once again, the representatives for the City and for the union met outside the hearing room in the hall for a private meeting. The same reporter followed the parties out of the hearing room and the two representatives made no effort to exclude him from this "off-the-record" encounter. After the second day's special master hearing was terminated, the appellee was informed of the settlement terms between the City and the police union. The membership of the police union ratified the settlement. The City Council, at a public meeting with notice, subsequently approved the contract, including the terms of the settlement agreed to during the private meeting on December 10.
We focus our attention, as did the trial judge, on the following pertinent part of PERA, section 447.605:
(1) All discussions between the chief executive officer of the public employer, or his representative, and the legislative body or the public employer relative to collective bargaining shall be exempt from s. 286.011 [the Government in the Sunshine Law].
(2) The collective bargaining negotiations between a chief executive officer, or his representative, and a bargaining agent shall be in compliance with s. 286.011.
(3) All work products developed by the public employer in preparation for negotiations, and during negotiations, shall be exempt from chapter 119.
*411 The City would have us note the use of different terms relating to the collective bargaining process in subsection (1)  "collective bargaining"  and subsection (2)  "collective bargaining negotiations." The City argues that there are four distinct phases of the collective bargaining process: (1) Recognition of the bargaining agent, (2) negotiations, (3) impasse resolution, and (4) contract administration. The City contends that because the legislature only submitted "negotiations" to the dictates of the Sunshine Law, the remaining phases of "collective bargaining" remain out of the sunshine. The trial judge was not persuaded by this view, nor are we.
Impasse only means a deadlock during negotiations where the parties refuse to compromise further to reach an agreement. Impasse is a feature of negotiations and is cured by further negotiation. The duty to negotiate is not extinguished by a declaration of impasse. See Vause, Impasse Resolution in the Public Sector  Observations on the First Decade of Law and Practice Under the Florida PERA, 37 U.Fla.L.Rev. 105 (1985). The City's attempts to characterize the collective bargaining process into categories which serve no meaningful distinction only avoid the obligation to carry out negotiations in the sunshine. The clear policy the legislature has established for Florida is simple to understand: To have the public's business carried out in public. As has been aptly stated by our supreme court:
Various boards and agencies have obviously attempted to read exceptions into the Government in the Sunshine Law which do not exist. Even though their intentions may be sincere, such boards and agencies should not be allowed to circumvent the plain provisions of the statute. The benefit to the public far outweighs the inconvenience of the board or agency. If the board or agency feels aggrieved, then the remedy lies in the halls of the Legislature and not in efforts to circumvent the plain provisions of the statute by devious ways in the hope that the judiciary will read some exception into the law.
Canney v. Board of Public Instruction, 278 So.2d 260, 264 (Fla. 1973) (construing section 268.011 in situation where board working in quasi-judicial capacity). Furthermore, it seems to us that the whole intent of the legislature  that public employee collective bargaining be conducted in the sunshine  could be thwarted by a declaration of impasse at a very early stage in the negotiations. In this way, the public could easily be shut out of a majority of the negotiating sessions which could be held in secret. The City's position would inevitably lead to this result which would prevent public scrutiny and undermine public understanding of and confidence in the bargaining process. Such a result would hardly promote "harmonious and cooperative relationships between government and its employees." § 447.201, Fla. Stat. (1985).
As an alternative argument, the City cites Bassett v. Braddock, 262 So.2d 425 (Fla. 1972), the only Florida Supreme Court case directly dealing with the question whether public employee collective bargaining must be held in the sunshine. In that case, decided before enactment of the collective bargaining statute, our supreme court said such bargaining need not be held in the sunshine. The court emphasized that, even though three legislative sessions had passed since the present constitutional provision guaranteeing collective bargaining for employees was adopted, the legislature had not yet passed the implementing statute necessary to give it meaning. Id. at 426. The court, therefore, merely affirmed the trial court order which refused to enjoin the holding of public employee contract negotiations out of the sunshine. The court, in dicta, speculated that negotiations in the sunshine "quite possibly would conflict with the protective umbrella of the constitutional guarantee of [article I] § 6." Id. Spurred by the urging of the supreme court in Bassett and the report of the court-appointed Supreme Court Public Employees Rights Commission, the legislature responded by implementing the constitutional provision when it enacted the Public Employee Relations Act in chapter 74-100, Laws of Florida. That act, which became chapter 447, provided that public employee collective bargaining negotiations between the contending parties be held in the sunshine. *412 § 447.605(2), Fla. Stat. (1985). The following portion of the trial judge's final order succinctly clarifies the issue and points to our disposition:
[I]t appears that the legislature has divided the total policy question into two categories [sic]. One in which the public employer is meeting with its own side and one in which the public employer is meeting with the other side. The first it has exempted from the Sunshine Law F.S. 447.605(1). The second it has specifically required be under the Sunshine Law F.S. 447.605(2). Therefore once the collective bargaining process provided for under Chapter 447 of the Florida Statutes begins whenever one side or any of its representatives meet with the other side or any of its representatives at any time, irrespective of whether it is before or after the declaration of an impasse, to discuss any thing relevant to the terms and conditions of their employer-employee relationship, such meeting is subject to the Sunshine Law F.S. 286.011 and such meetings must be arranged or held so the Sunshine Law may be given effect and the Sunshine Law must be complied with. In the absence of this, such discussions may not be had irrespective of any agreement between the parties and no matter how beneficial it may be to the public interest.
The Florida Supreme Court has recently clarified the broad language of Bassett in Neu v. Miami Herald Publishing Co., 462 So.2d 821, 824 (Fla. 1985), wherein it held that meetings between a city attorney and a city council for the purpose of discussing settlement of pending litigation to which the city was a party had to be held in the sunshine. Specifically, the court stated that:
[O]ur decision [in Bassett] was restricted to and rested on what we saw to be a constitutional exception to the Sunshine Law, to wit: the article I, section 6 right of public employees to bargain collectively.
Neu, 462 So.2d at 824 (emphasis added). At the time the court decided Bassett, it did not have the benefit of the legislature's pronouncements on the constitutional right of public employees to bargain collectively. The court was forced to analogize to private employees who can negotiate out of the sunshine in furtherance of their same right to collectively bargain. The court's discussion of a constitutional exception to the Sunshine Law in Bassett does not determine the issue before us which is based on construction of the post-Bassett statutory enactment implementing the constitutional provision.
The City lastly suggests to us that we reverse so that we may avoid a confrontation between public employees' constitutional right to bargain collectively and the Sunshine Law. We see no such confrontation. Florida public employees have the constitutional right to bargain collectively subject to the reasonable conditions of PERA, including application of the Sunshine Law. § 447.605(2), Fla. Stat. (1985). The burden of negotiating in the sunshine is hardly more onerous than being constitutionally deprived of the right to strike in article I, section 6. The right to strike is the mightiest weapon available to private employees in the collective bargaining process. Our holding that all phases of the public employee collective bargaining process between the contending parties must be held in the sunshine merely reiterates the strong public policy in Florida in place since the enactment of our Sunshine Law in 1967. See, e.g., Board of Public Instruction v. Doran, 224 So.2d 693 (Fla. 1969); Canney. Further, the coverage of sunshine in Florida is general, whereas exemptions must be specific. Wood v. Marston, 442 So.2d 934 (Fla. 1983). When it enacted PERA, the legislature did not exempt post-impasse negotiations between the contending parties from compliance with the Sunshine Law; on the contrary, it specifically included them. Because that is so, we find that the trial court correctly interpreted the statute. Accordingly, we affirm the order before us.
SCHOONOVER and HALL, JJ., concur.
NOTES
[1] § 447.403, Fla. Stat. (1985).
[2] § 286.011, Fla. Stat. (1985).
[3] The negotiations between the City and the general employees' union also came to an impasse. The same procedures for public notice and participation of the appellee had been followed. The same special master was selected to hear both disputes on consecutive days. The dispute between the City and the police union was scheduled for the first day; the general employees' union had the special master for the second day.