**BURLINGTON COMMUNITY SCHOOL DISTRICT, Appellant,**

v.

**PUBLIC EMPLOYMENT RELATIONS BOARD, Appellee,**

and

**Burlington Education Association, Intervenor.**

**No. 61141.**

Supreme Court of Iowa.

July 26, 1978.

John D. Cray, of Cray, Walter, Cray, Loeschen & Goddard, Burlington, for appellant.

Richard C. Turner, Atty. Gen., and Marie A. Condon, Asst. Atty. Gen., for appellee Public Employment Relations Bd.

Charles E. Gribble, of Dreher, Wilson, Adams & Jensen, Des Moines for appellee-intervenor Burlington Ed. Ass'n.

Edgar H. Bittle, of Herrick, Langdon, Belin, Harris, Langdon & Helmick, Des Moines, for amicus curiae Iowa Ass'n of School Bds., Inc.

Considered by MOORE, C. J., and Le-GRAND, REES, REYNOLDSON and MASON (serving after June 14, 1978 by special assignment), JJ.

REES, Justice.

This appeal is the culmination of a dispute arising from public employment negotiations between the plaintiff Burlington Community School District and its teachers bargaining representative, defendant Burlington Education Association. The school board requested open negotiating sessions, while the Education Association insisted the sessions be conducted in private. The school district submitted the controverted question to the appellee, Public Employment Relations Board (PERB) for a declaratory ruling. After such declaratory ruling had been made by PERB, the school district sought judicial review by the district court which affirmed PERB's declaratory ruling, and the school district appealed. We affirm.

The school district and the Burlington Education Association had commenced negotiations for collective bargaining with regard to the pay scale of the teachers employed by the plaintiff district. The school district requested the negotiating sessions be held in public and the Education Association requested closed sessions. The school district then filed with PERB a petition for a declaratory ruling, the purpose of which was to determine whether a public employer can unilaterally determine whether negotiating sessions are to be open or closed, and whether the sessions should be closed or open if a public employer and a certified employee organization negotiate on the question of closed, *vis-a-vis*, open sessions and reach impasse.

The Education Association filed its answer with PERB requesting a declaratory ruling on the same questions and upon a further question, which assumed the matter of open sessions versus closed sessions was a negotiable item, since the parties agree they were at impasse over such question whether the sessions should be closed or open based on the facts of this particular case.

The petition for declaratory ruling was filed by the school district on September 24, 1976, and on November 3, 1976, pursuant to § 17A.9, The Code, 1975 PERB filed its declaratory ruling. A timely petition for judicial review was filed by the school district on November 24, 1976, and the Education Association filed its application for permission to intervene in the proceedings on December 13, 1976. Hearing was had to the court on June 23, 1977, and the ruling of the court was filed on August 15, 1977, affirming PERB's declaratory ruling. The appeal to this court ensued.

Two questions were initially submitted to PERB for declaratory ruling by the school district:

(1) May a public employer unilaterally determine whether negotiating sessions are to be conducted as open or closed sessions?

(2) If a public employer and a certified employee organization negotiate on whether the negotiating sessions shall be conducted as open or closed sessions but reach impasse on the matter, what is the decision of the Public Employment Relations Board as to whether the sessions will be closed or open?

The Burlington Education Association submitted a third question for resolution by PERB:

(3) Since the employer and employee (organization) in this case agree that they are at impasse over open versus closed negotiating sessions, shall the sessions between these parties be open or closed based on the facts of this particular case?

PERB answered the questions as follows:

(1) No.

(2) The sessions must be closed.

(3) The sessions must be closed.

PERB also pointed out that § 20.17(3), The Code (Public Employment Relations Act), exempts public employment negotiations from the open meeting requirements in chapter 28A, The Code,[1] but in an observation which appears to be in the nature of *obiter dicta* observed that negotiations could be open if the parties to the controversy mutually agreed to such procedure.

In the school board's petition for judicial review it asserted the PERB ruling was in violation of law and was based upon erroneous interpretations of chapter 20, The Code, and requested the trial court to grant declaratory relief by ruling that a public employer may unilaterally determine that negotiating sessions are to be conducted as open sessions; and that if the parties reach impasse on whether the meetings shall be open or closed and the public employer desires open sessions, the sessions must be open. The Burlington Education Association filed an application for permission to intervene in the judicial review proceedings, which the trial court granted.

After presentation of oral argument, the trial court affirmed PERB's declaratory ruling, and held that the obvious intent of § 20.17(3), The Code, was to exempt public employment negotiating sessions from the provisions of the open meetings law, basing its conclusions in part upon an opinion of the Attorney General of Iowa under date September 19, 1976, which had been cited by PERB in its ruling, and upon a ruling by the Public Employment Relations Board of the State of Nevada in a matter entitled *Washoe County Teachers Association and Washoe County School District*, PERB case number AL–045295, item number 54 (Nevada 1976), which the trial court felt dealt precisely with the question before it in this case. The trial court further held the public's right to know must be distinguished from the bargaining process itself, and although the public should be kept informed as to the progress of bargaining, it need not be included in the actual bargaining process. The three questions posed to the PER Board were answered by the trial court in the same manner as did PERB in its ruling. The Iowa Association of School Boards, Inc., with the consent of all the parties, filed on December 6, 1977 an amicus curiae brief in this appeal in support of the school board's position. In its brief, it asserts: (1) since public employment negotiating sessions are exempt from the open meetings law, chapter 28A, The Code, they are subject to the common law of public meetings which permits the public body to determine whether meetings will be closed or open to the public; (2) the school board has the statutory power to make rules for its own government, § 279.8, The Code, which includes the power to determine whether bargaining sessions should be open or closed; and (3) the school board was vested with discretion in the management of school affairs and that courts should not interfere with a school board's discretionary decision to conduct open negotiating sessions in employment controversies.

While the parties in their respective briefs fragment the issues to some extent, we believe the issue before us here succinctly and briefly stated is: whether the trial court erred in affirming PERB's declaratory ruling that a public employer could not unilaterally determine whether the negotiating sessions were to be open or closed; that if the public employer and the certified

---

1. This provision has been amended effective January 1, 1978 to make the first two bargaining sessions open to the public, but the amendment is not involved in the present case. See Acts 67 G.A. (1978 Session) H.F. 2074 § 10.

employee organization are unable to agree, the sessions must remain closed; and that since the parties in this case cannot agree on the matter, the negotiating sessions must be closed.

■ I. This appeal involves the review authorized under § 17A.19, The Code, 1975, of an agency's action interpreting § 20.-17(3), The Code. Interpretation of a statutory provision is a question of law which is within the province of the court to decide, but the court will give weight to an agency's construction of the statute so long as the agency does not purport to make law or to change the legal meaning of the law. *West Des Moines Education Association v. Public Employment Relations Board*, 266 N.W.2d 118, 125 (Iowa 1978).

II. The central issue involved in this case is whether a school district as a public employer can unilaterally determine whether negotiating sessions between it as a public employer and a recognized negotiating organization of public employees are to be open or closed on the basis of § 20.17(3) of the Code, which section provides:

"Negotiating sessions, including strategy meetings of public employers or employee organizations, mediation and the deliberative process of arbitrators shall be exempt from the provisions of chapter 28A. Hearings conducted by arbitrators shall be open to the public."

The plaintiff contends that since such sessions are exempted from the provisions of chapter 28A, the board has the right to determine whether the sessions are to be open or closed. To buttress this assertion, the board cites §§ 274.1 and 279.8, The Code, 1975. Section 274.1 provides that each school district shall constitute a body politic as a school corporation unless changed as provided by law, and as such may sue and be sued, hold property, and exercise all the powers granted by law, and shall have exclusive jurisdiction in all school matters over the territory therein contained. Section 279.8, The Code, provides in pertinent part:

"The board shall make rules for its own government and that of the directors, officers, teachers, and pupils, and for the care of the school house, grounds, and property of the school corporation, and aid in the enforcement of the same, and require the performance of duties by said persons imposed by law and the rules. * * *"

The plaintiff school district suggests that the foregoing statutory provisions vested it with authority to unilaterally determine whether the negotiating sessions between it and the bargaining association were to be open or closed, and asserts that since said sessions are exempted from the provisions of chapter 28A, the common law, which would allow the board as the ruling body to determine whether such sessions should be closed or open, should be applied to permit the board to decide the question as to whether the sessions should remain closed.

The school district further suggests that such a result is contemplated by the provisions of § 20.7, The Code, 1975, which in pertinent part provides:

"Public employers shall have, in addition to all powers, duties, and rights established by constitutional provision, statute, ordinance, charter, or special act, the exclusive power, duty, and right to:

"1. Direct the work of its public employees, * * *.

        *       *       *       *       *       *

"4. Maintain the efficiency of governmental operations.

        *       *       *       *       *       *

"7. Take such actions as may be necessary to carry out the mission of the public employer.

        *       *       *       *       *       *

"9. Exercise all powers and duties granted to the public employer by law."

The school district insists that on the basis of the foregoing statutes and the common law on the subject, that it should be allowed to specifically determine whether the sessions with which we are concerned here are to be closed or open.

On the other hand, the Education Association suggests that under the provisions of

§ 20.17(3), The Code, both parties must agree on whether the sessions are to remain open or be closed, and that a public employer cannot unilaterally order the sessions opened to the public. In support of this contention the Education Association argues that one of the purposes of the Public Employment Relations Act is to promote a procedure for good faith bargaining between a public employer and a recognized employee organization, which requires that decisions made in that process be mutually agreed on unless the legislature specifically directed otherwise. PERB also notes that if the legislature desired that a public employer should be able to determine whether sessions were to be opened or closed, it could and would have specifically provided for such right in § 28A.3, The Code, which permits a public agency to close a meeting by a vote of its members in certain instances. Since sessions for collective bargaining are expressly not covered by § 28A.3, PERB concludes that it was not the legislative intent to allow the school board as the public employer to determine unilaterally whether the sessions were to be opened or closed. PERB also notes other jurisdictions have determined that negotiating sessions should be closed unless the parties agree otherwise.

Section 20.17(3), The Code, specifically exempts such negotiating sessions from the open meeting provisions contained in chapter 28A. However, § 20.17(3) is not specific as to whether such sessions should be open or closed and who should determine whether they should be so closed or so opened. Therefore, the matter presented to us here is one of statutory interpretation.

Our interpretation of § 20.17(3) is controlled by the legislative intent in its enactment of the statute and we must interpret the statute to give effect to such intent. *Doe v. Ray*, 251 N.W.2d 496, 500 (Iowa 1977) and citations. On the question of the determination of legislative intent, we have noted:

"Thus, intent is shown by construing the statute as a whole. In searching for legislative intent we consider the objects sought to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. (citations)." *Doe v. Ray*, 251 N.W.2d at 500–501.

With further regard to the matter of legislative intent, we said:

"It is also essential we examine both the language used and purpose for which the legislation was enacted. In seeking the meaning of a law the entire act should be considered and each section construed with the act as a whole and all parts thereof construed together. The subject matter, reason, consequence and spirit of an enactment must be considered, as well as words used. Additionally a statute should be accorded a sensible, practical, workable and logical construction." *In the Matter of the Estate of Bliven*, 236 N.W.2d 366, 369 (Iowa 1975).

On the basis of the standards referred to above, we must determine the intent of the legislature in providing an exemption from the open meeting requirements set out in chapter 28A. Since we are required to look to the statute as a whole in determining legislative intent in the enactment of § 20.17(3), a look at the legislature's declaration of policy in enacting chapter 20, The Code (the Public Employment Relations Act), will aid us in determining the intent behind exempting those negotiating sessions from the requirements of the open meetings law. Such declaration of public policy is set out in § 20.1, The Code, which provides:

"The general assembly declares that it is the public policy of the state to promote harmonious and co-operative relationships between government and its employees by permitting public employees to organize and bargain collectively; to protect the citizens of this state by assuring effective and orderly operations of government in providing for their health, safety, and welfare; to prohibit and prevent all strikes by public employ-

ees; to protect the rights of public employees to join or refuse to join, and to participate in or refuse to participate in, employee organizations."

In the light of the declared policy of the legislature to promote harmonious and co-operative relationships between government agencies and their employees, we are constrained to hold that such public policy would not be satisfied or fulfilled by permitting a school board to unilaterally determine that negotiating sessions should be either open or closed. A co-operative relationship between the two negotiating parties would be weakened or destroyed if we were to interpret § 20.17(3) as permitting the public employer to open negotiating meetings to the public against the wishes and will of the public employees' organization.

Courts of other jurisdictions have recognized the merit of conducting such negotiating sessions in private. In *Talbot v. Concord Union School District*, 114 N.H. 532, 535, 323 A.2d 912, 913 (1974), the Supreme Court of New Hampshire said:

"However, it is improbable that the legislature intended the law to apply in such a fashion as to destroy the very process it was attempting to open to the public. See Annot., 38 A.L.R.3d 1070 § 6(b) (1971). There is substantial authority in support of the defendant's position that the delicate mechanisms of collective bargaining would be thrown awry if viewed prematurely by the public. *Bassett v. Braddock*, 262 So.2d 425 (Fla. 1972); R. Smith, H. Edwards & R. Clark, Jr., Labor Relations Law in the Public Sector 569–594 (1974); Edwards, The Emerging Duty to Bargain in the Public Sector, 71 Mich.L.Rev. 885, 901–02 (1973); Wickham, Let the Sun Shine In! Open-Meeting Legislation Can Be Our Key to Closed Doors in State and Local Government, 68 Nw.U.L.Rev. 480, 491–92 (1973); see R. Smith, L. Merrifield & D. Rothschild, Collective Bargaining and Labor Arbitration 36–44 (1970)."

As the Public Employees Relations Board in this case recognized in its declaratory ruling, several state labor boards have ruled that a public employer's unilateral demand that negotiating sessions be opened amounts to bad faith on the part of the employer since bargaining in public would tend to inhibit, if not destroy, the bargaining process. Washoe County Teachers Association and the Washoe County School District, Nev. Local Government Employee-Management Relations Board, Case no. AL–045295, item # 54, Gov't Empl. Rel. Rep't No. 664, B–4 (1976); Bethlehem Area School Directors, Penn Lab. Rel. Bd., Case no. PERA–C–2861–C, Gov't Empl. Rel. Rep't No. 505, E–1 (1973); Mayor Samuel E. Zoll and the City of Salem, Mass. Lab. Rel. Bd., Case no. MUP–309 (1972); Menominee Bd. of Educ., MERC Lab. Op. 383, 386 (Mich.1968).

PERB, in its declaratory ruling, cited the following language in Washoe, *supra*:

"Having found that these negotiations are exempt from the open meeting setting, it would seem that the provisions of NRS 288.220(1) indicate an option that negotiations may either be open or closed. Unfortunately, the statute does not address itself to specifically who shall make the determination whether the sessions are to be open or closed.

"The purpose of NRS Chapter 288 is to provide the framework within which local government employers and employee organizations may bargain collectively, and to open lines of communication, both formal and informal. The obligation to bargain collectively is a *mutual* one and is defined as such by NRS 288.030. At any time one party to the collective bargaining process establishes, unilaterally, a condition precedent to collective bargaining which is not provided for in Chapter 288, they are thwarting the purpose of the Act and are in violation of their obligation to bargain in good faith.

"The reasons for closed negotiation sessions are too numerous and too obvious to be restated here and are well expressed in the authority previously cited. We find that, in light of the purposes, both express and implied, in Chapter 288 of

the Nevada Revised Statutes, negotiation sessions are to be closed unless the parties *mutually* agree otherwise."

The school district argues that the exemption contained in § 20.17(3) must be read as empowering the school board as the public employer to determine unilaterally whether such negotiating sessions should be closed or open since it had the right to do so under common law and the provisions of §§ 274.1 and 279.8, The Code. Such argument completely ignores the violence the exercise of such a right would do to the collective bargaining process. The public policy of the Public Employment Relations Act is to encourage harmony between public employees and government, and the privilege to exercise the right claimed by the school board unilaterally would contribute to discord and a complete lack of harmony between the two entities. Such argument on the part of the school district further ignores the fact that if the legislature intended an agency to be able to unilaterally decide whether such bargaining sessions could or must be opened to the public, it could have included negotiating sessions as in the matter before us here under the provisions of 28A.3 of the Code, as a meeting which could be closed by a vote of the agency's members. The fact that the legislature did not so provide for such an exception in § 28A.3 is an indication to us the legislature did not intend a public agency such as the school district in this case to have such unilateral power to determine whether the negotiating sessions during the collective bargaining process should be closed or opened.

We therefore hold that in the light of the expressed public policy motivating the enactment of the Public Employment Relations Act to encourage "harmonious and co-operative relationships between public employees and government", and in light of the probable violence that could result to such collective bargaining sessions and the relationship between public employers and public employees, § 20.17(3) must be read as providing an exemption from the open meeting requirements set forth in chapter 28A, The Code, and that the negotiating sessions must remain closed unless both sides agree otherwise. The Burlington School District, through its school board, may not unilaterally determine that such sessions should be open, except, however, as PERB stated in its declaratory ruling, there is nothing in § 20.17(3) prohibiting the parties to such negotiating sessions from agreeing that the sessions should be open to the public. We further conclude that the insistence of a public employer that sessions be open to the public as a condition precedent to collective bargaining is a prohibited practice under § 20.10(3)(a), The Code, as such insistence would interfere with the rights of public employees to bargain collectively under § 20.8(2), The Code. The right of the public to be informed concerning decisions reached in the collective bargaining process is adequately protected by § 20.17(4), The Code, which provides that the terms of any collective bargaining agreement must be made public.

We therefore affirm the holding of the trial court affirming the declaratory ruling of the Public Employment Relations Board which permitted negotiating sessions between a public employer and a recognized organization of public employees to be open only if both sides to the negotiations agree and not alone on the basis of the public employer's insistence that such sessions be open. We conclude such interpretation of § 20.17(3) furthers and advances the public policy behind the Public Employment Relations Act to encourage harmonious and co-operative relationships between government and its employees.

We therefore affirm the order and ruling of the trial court in this case.

AFFIRMED.