BOARD OF SELECTMEN OF MARION *vs.* LABOR RELATIONS
COMMISSION.

Plymouth.   March 15, 1979. — April 9, 1979.

Present: BROWN, GREANEY, & KASS, JJ.

*Labor,* Collective bargaining, Unfair labor practice, Public bargaining sessions. *Municipal Corporations,* Collective bargaining, Open meetings. *Open Meeting Law.*

Although the open meeting law contained in G. L. c. 39, § 23A-23C, manifests a general policy that all meetings of a governmental body should be open to the public, it is permissible to conduct collective bargaining in executive session. [361]

Despite the fact that the open meeting law contained in G. L. c. 39, § 23A-23C, manifests a general policy that all meetings of a governmental body should be open to the public, the Labor Relations Commission could properly determine that, by refusing to negotiate with the representatives of its employees in executive session, a town's board of selectmen failed to bargain collectively in good faith and, therefore, engaged in "a prohibited practice for a public employer" within the meaning of G. L. c. 150E, § 10(*a*)(5). [361-363]

CIVIL ACTION commenced in the Superior Court on January 16, 1976.

The case was heard by *Brown, J.*, a District Court judge sitting under statutory authority.

*William H. Carey* for the plaintiffs.

*David F. Grunebaum* for the defendant.

KASS, J. Because it insisted on conducting collective bargaining sessions in meetings open to the public, the board of selectmen of the town of Marion (selectmen) was charged with refusing to bargain collectively in good faith[1] by the Labor Relations Commission (commission). From this decision of the commission, the selectmen appealed to the Superior Court under G. L. c. 30A, § 14. The court correctly affirmed the decision of the commission.

1. While the open meeting law contained in G. L. c. 39, § 23A-23C, "manifests in § 23B a general policy that all meetings of a governmental body should be open to the public," *Attorney Gen.* v. *School Comm. of Taunton, ante* 226, 229 (1979), it is permissible to conduct collective bargaining in executive session. G. L. c. 39, § 23B. See *Ghiglione* v. *School Comm. of Southbridge*, 376 Mass. 70, 73 (1978).

2. This leaves the question whether declining to draw a shade on the sunshine law constitutes a refusal "to bargain collectively in good faith with the exclusive representative as required in section six [of G. L. c. 150E]." G. L. c. 150E, § 10(a)(5), as amended by St. 1974, c. 589, § 2. In reviewing the action of an administrative agency we bear in mind our duty to "give due weight to the experience, technical competence, and specialized knowledge of the agency." G. L. c. 30A, § 14, as amended by St. 1976, c. 411.

Since the policy of the open meeting law is to conduct public business in the open, the selectmen suggest that going behind closed doors, even though permissible, derogates from the policy of the statute. Supporting a policy

---

[1] G. L. c. 150E, § 10(a)(5).

of open covenants openly arrived at, the selectmen say, cannot be tantamount to an unfair labor practice.

Yet the very fact that an exception for collective bargaining appears in the statute evidences a legislative judgment that there is something to be said for closed door labor negotiations. Indeed, when it considered the question in the context of an open meeting statute that did not provide a collective bargaining exception, the New Hampshire Supreme Court observed that there was considerable support for the proposition that "the delicate mechanisms of collective bargaining would be thrown awry if viewed prematurely by the public." *Talbot* v. *Concord Union Sch. Dist.*, 114 N.H. 532, 535 (1974). The court in *Talbot* also noted the position of several State labor boards that bargaining in public would tend to prolong negotiations and damage the procedure of compromise inherent in collective bargaining.[2] *Id.* See *Bassett* v. *Braddock*, 262 So. 2d 425 (Fla. 1972). The reason underlying this conclusion is that the presence of press and public induces rigidity and posturing by the negotiating teams and provokes in them anxiety that compromise will look like retreat. Commentators share this view. 1 Werne, Law and Practice of Public Employment Labor Relations § 15.3, at 266-267 (1974). Wickham, Tennessee's Sunshine Law: A Need For A Limited Shade And Clearer Focus, 42 Tenn. L. Rev. 557, 564 (1975). 1975 Committee Report of the Labor Relations Law Section of the American Bar Association, Part I, at 274.

Thus supported by authority, as well as its expertise, the commission could properly determine that by refusing to negotiate with the representatives of its employees in executive session, the selectmen failed to bargain collectively in good faith and, therefore, engaged in "a pro-

---

[2] This has certainly been the position of the Labor Relations Commission. See *Mayor Zoll & City of Salem & Firefighters' Local 1780*, Labor Relations Commn. No. MUP-309, decided December 14, 1972; *School Comm. of Holbrook & Holbrook Educ. Assn.*, 5 M.L.C. 1491 (December 11, 1978).

hibited practice for a public employer." G. L. c. 150E,
§ 10(a)(5).

*Judgment affirmed.*