# CARROLL COUNTY EDUCATION ASSOCIATION, INC. v. BOARD OF EDUCATION OF CARROLL COUNTY

[No. 4 (Adv.), September Term, 1982.]

*Decided August 5, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*James R. Whattam,* with whom was *Walter S. Levin* on the brief, for appellant.

*Amici curiae* brief of American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) and Maryland Council 67, American Federation of State, County and Municipal Employees, AFL-CIO filed. *William H. Engelman* and *Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Larry P. Weinberg, Martha Walfoort* and *Kirschner, Weinberg, Dempsey, Walters & Willig* on the brief.

*Edward J. Gutman,* with whom was *Thomas A. Baker* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. COLE and DAVIDSON, JJ., dissent. DAVIDSON, J., filed a dissenting opinion at page 156 *infra,* in which COLE, J., joins.

The issue in this case is whether the Maryland Open Meetings Act, Maryland Code (1957, 1980 Repl. Vol.), Article 76A, §§ 7-15 (the Act), authorizes a county board of education to determine unilaterally to conduct collective bargaining negotiations at meetings open to the public, notwithstanding the provisions of Code (1978), § 6-408 of the Education Article, which require that public school employers negotiate in "good faith" with representatives of employee organizations.

I

Labor relations between a county board of education and public school employees are governed by a comprehensive legislative scheme, originally enacted by ch. 483 of the Acts of 1968, now codified as §§ 6-401 to 6-411 of the Education Article. Section 6-408 (b) (1) requires that

"On request a public school employer or at least two of its designated representatives shall meet and *negotiate* with at least two representatives of the employee organization that is designated as the exclusive negotiating agent for the public school employees in a unit of the county on all matters that relate to salaries, wages, hours, and other working conditions." (Emphasis supplied.)

Section 6-408 (a) (1) (i) defines the word "negotiate" as including the duty to:

"Confer in *good faith,* at all reasonable times." (Emphasis supplied.)

Another provision of the Education Article, § 4-106 (e) (2), provides that a county board of education "may meet and deliberate in executive session if the matter under consideration is . . . labor relations."

The Open Meetings Act was enacted by ch. 863 of the Acts of 1977; it requires that meetings of public bodies, with limited exceptions, be open to the public. *Avara v. Baltimore News American,* 292 Md. 543, 440 A.2d 368 (1982). The strong policy in favor of open meetings is expressed in § 7:

"It is essential to the maintenance of a democratic society that except in special and appropriate circumstances public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy."

Section 9 states that the Act applies to a public body when it is exercising, *inter alia,* "quasi-legislative" functions; that term is defined in § 8 (i) to encompass, among other matters, "[t]he approval, disapproval, or amendment of a contract . . . by a public body, *or the process of doing so."* (Emphasis supplied.) Section 8 (g) defines a "public body" as

"an entity consisting of two or more persons that is created by the State Constitution, by State statute,

local charter or ordinance, or rule, resolution or
bylaw, or by executive order of the Governor or the
chief executive authority of a political subdivision
of the State." ·

Section 8 (f) defines a "meeting" to mean

"the convening of a quorum of the constituent mem-
bership of a public body for the purpose of con-
sidering or transacting public business."

Section 10 requires that meetings of every public body
covered by the Act "shall be open to the public unless closed
in accordance with § 11." Section 11 (a) states that a public
body required to have an open meeting by § 10 "may have
a closed meeting" for any of thirteen specified reasons, one
of which, § 11 (a) (8), is for the purpose of

"[c]onducting collective bargaining negotiations or
considering matters and issues in connection
therewith."

## II

Every year since June of 1968, the Board of Education of
Carroll County (the Board) and the Carroll County Educa-
tion Association, Inc. (the Association), through their respec-
tive representatives, have met in closed sessions to negotiate
matters relating to salaries, wages, hours and other working
conditions for certain employees of the Board. On August 12,
1981, the Board adopted a resolution requiring that such
collective bargaining sessions thereafter be conducted as
meetings open to the public. The Association objected to the
Board's action on the ground that the obligation of "good
faith" bargaining contained in § 6-408 of the Education
Article prohibited the Board from unilaterally determining
that the collective bargaining sessions would be conducted
at meetings open to the public.

After unsuccessfully pursuing all available administra-
tive remedies, the Association filed a declaratory judgment
action in the Circuit Court for Carroll County. The Associa-

tion sought a declaration that the Board's resolution of August 12, 1981 was void as being in violation of the Board's duty to negotiate in good faith with employee organizations, as required by § 6-408 of the Education Article. In addition, the Association sought a decree directing the Board to institute collective bargaining negotiations in executive or closed sessions unless both parties agreed to the contrary.

The trial court (Gilmore, J.) granted the Board's motion for summary judgment and "dismissed" the action. It noted that

> "the process of the Board and the Association negotiating a contract, the monetary provisions of which are later included as part of the Board's budget, is a process which falls within the statutory definition of 'quasi-legislative function.' Thus, Section 10 (a) requires that the Board's meetings with the Association for this purpose 'shall be open to the public unless closed in accordance with Section 11.'"

The lower court emphasized that

> "[a]lthough Section 11 (a) (8) authorizes the Board to conduct its negotiations with the Association in closed session, it in no way requires closed sessions. Under the statute, adjournment of an open meeting into closed session is at the option of the public body, in this case, the Board."

The trial court concluded that to hold in favor of the Association

> "would be to give the Association the power to unilaterally determine that negotiations should be closed to the public, in contravention of the general statement of public policy found in Section 7."

We granted certiorari prior to decision by the Court of Special Appeals to determine the important issues of statutory construction presented by the case.

## III

In seeking reversal of the judgment below, the Association offers two basic arguments. First, while it readily acknowledges that the Open Meetings Act permits a public body to hold collective bargaining sessions as open meetings, it argues that because § 6-408 of the Education Article imposes the duty upon the Board to negotiate in good faith, neither party can unilaterally insist upon open meetings as a precondition to further negotiations. For the Board to do so, the Association claims, is a per se violation of its statutory duty under § 6-408. Secondly, the Association argues that collective bargaining sessions between representatives of a local board of education and representatives of an employee organization are not within the ambit of the Open Meetings Act. This is so, the Association contends, because the relevant "public body" for purposes of § 8 (g) of the Act is the Board itself, not its negotiating representatives. Consequently, the Association urges that unless a quorum of the members of the Board is present at negotiating sessions, the sessions are not "meetings" within the contemplation of § 8 (f) of the Act.

In support of its first argument, the Association places reliance upon a number of court and state labor board decisions which espouse the view that the public interest is best served by conducting public sector labor negotiations in sessions closed to the public. These cases, in general, advance the notion that the presence of the public and press at such negotiating sessions inhibits the free exchange of views and freezes negotiations into fixed positions from which neither party can recede without loss of face; in other words, that meaningful collective bargaining would be destroyed if full publicity were accorded at each step of the negotiations. *See, e.g., Talbot v. Concord Union School District,* 114 N.H. 532, 323 A.2d 912 (1974); *Board of Selectmen v. Labor Relations Com'n,* 7 Mass. App. 360, 388 N.E.2d 302 (1979); *State Ex Rel. Bd. of Pub. Utilities v. Crow,* 592 S.W.2d 285 (Mo. App. 1979). The Association maintains that the authorities upon which it relies universally condemn unilaterally required

public bargaining regardless of whether the collective bargaining law is accompanied by an Open Meetings Act,[1] by one with a specific exception for collective bargaining sessions,[2] or even by one with no specifically applicable exception for such purposes.[3]

## IV

In the view we take of this case, we need not undertake a detailed analysis of the authorities presented by the Association because the matter before us is essentially one of construing two Maryland statutes under applicable principles of statutory construction to ascertain the intention of the General Assembly. The determination whether the Board negotiates in "good faith" within the meaning of § 6-408 of the Education Article "is a subjective measure which can be applied only in light of the totality of the circumstances." *Mont. Co. Council v. Bd. of Education,* 277 Md. 343, 349, 354 A.2d 781 (1976). On the other hand, the heart of the Open Meetings Act is found in the public policy declarations of § 7, *i.e.,* that "public business be performed

1. Pennsylvania Labor Relations Board v. Board of School Directors of the Bethlehem Area School District, Case No. PERA-C-2861-C, April 11, 1973, GERR 505 (E-1) (Pa. Labor Relations Board, 1973).

2. Burlington Community School District v. Public Employment Relations Board, 268 N.W.2d 517 (1978); Board of Selectmen v. Labor Relations Com'n, *supra;* Brielle Board of Education and Brielle Education Association, State of New Jersey PERC, Docket No. CO-77-88-92, June 23, 1977 (Public Employment Relations Commission); Washoe County Teachers Association and the Washoe County School District, Nevada Local Government Employee-Management Relations Board Case No. A1-045295, May 21, 1976; City of Sparta and Local 1947-A Wisconsin Council of County and Municipal Employees, AFSCME, AFL-CIO, Case VIII, No. 19480, DR(M)-68, Decision No. 14520, April 7, 1976 (Wisconsin Employment Relations Commission); Mayor Samuel E. Zoll and The City of Salem, Massachusetts and Local 1780, International Association of Firefighters, Case No. MUP-309, December 14, 1972 (Labor Relations Commission).

3. Bassett v. Braddock, 262 So.2d 425 (Fla. 1973); Talbot v. Concord Union School District, *supra;* State Ex Rel. Bd. of Pub. Utilities v. Crow, *supra;* Quamphegan Teachers Association v. Board of Directors, School Administrative District No. 35, Case No. 73-05, April 20, 1973 (Maine Public Employees Relations Board); Board of Education of the City of Menominee v. Menominee City District Michigan Education Association, Case No. C67E-38, May 17, 1968 (Michigan Labor Mediation Board).

in an open and public manner and that the citizens be advised of and aware of the performance of public officials [when exercising quasi-legislative functions] and the deliberations and decisions that go into the making of public policy." That commitment, as we observed in *City of New Carrollton v. Rogers,* 287 Md. 56, 410 A.2d 1070 (1980), is secured by the provisions of § 10 requiring that meetings of public bodies be open to the public. Moreover, the open meeting commitment is reinforced by § 15 of the Act which provides that "[i]n any conflict between this subtitle and other provisions of law relating to the meetings of public bodies, this subtitle shall apply, unless the provisions of other laws are more stringent."

We have long held that where two statutes deal with the same subject matter, *i.e.,* collective bargaining sessions, and are not inconsistent with each other, they must be harmonized to the extent possible — notwithstanding the fact that the statutes may have been enacted at different times with no reference to each other. *Surratts Assoc. v. Prince Geo's Co.,* 286 Md. 555, 560, 408 A.2d 1323 (1979), citing *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977). This principle of statutory construction operates because the law does not favor repeal by implication. *Surratts Assoc., supra,* at 560; *Dowling, supra,* at 419; *Comm'n on Med. Discipline v. Bendler,* 280 Md. 326, 330, 373 A.2d 1232 (1977). Of course, to the extent the provisions of the two statutes are irreconcilable, the later statute governs. *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 495, 331 A.2d 55 (1975); *Bd. of Fire Comm'rs v. Potter,* 268 Md. 285, 291, 300 A.2d 680 (1973); *Department v. Greyhound,* 247 Md. 662, 234 A.2d 255 (1967).

Applying these principles in the present case, it is clear that the two statutes are not inconsistent, facially or otherwise. Plainly, they may be harmonized and each given effect without adopting the strained construction sought by the Association. It is axiomatic that the Board's action in directing that the collective bargaining meetings be open to the public, taken pursuant to the requirements of the Act, may in no event be construed to constitute a per se violation

of its statutory mandate to negotiate in good faith under § 6-408 of the Education Article. The requirement of good faith negotiations, on the one hand, and open collective bargaining sessions, on the other, are simply not, on their face, incompatible concepts which cannot coexist and be harmoniously applied at the same time. In other words, a harmonious reading of the two statutes affords an interpretation to the "good faith" requirement consistent with the Open Meetings Act — that while the Board must come to the bargaining table with an open mind, prepared to negotiate a contract, it may conduct the bargaining process in public. We thus find no merit in the Association's argument that the two statutes are more appropriately harmonized by construing the "good faith" requirement of § 6-408 to permit open meetings only if both sides agree. We think that such a construction strives only to reach a result which, although it may better promote harmony and avoid discord in the initial phases of the collective bargaining process, is at odds with the legislative intention, as manifested by the language of the statutes under consideration. The construction sought by the Association is a matter solely for the legislature to adopt, if and as it sees fit.[4]

The authorities cited in support of the Association's position are either inapposite on their facts or unpersuasive in their reasoning. For example, *Burlington Community School District v. Public Employment Relations Board,* 268 N.W.2d 517 (1978), is not relevant authority in Maryland because the Open Meetings Law in Iowa expressly exempted collective bargaining negotiations from the coverage of that state's act.[5] Five other cases relied upon by the Association

---

4. As the case before us is solely one for declaratory judgment submitted on the pleadings, we do not consider the question of whether the Board, in conducting open collective bargaining sessions, would violate the good faith requirement of § 6-408 where it was shown, on a proper record, that the board's motivation in holding open meetings was not in furtherance of the purpose underlying enactment of the Open Meetings Act, but rather was for the purpose of subverting or undermining the meaningful course of the collective bargaining process itself.

5. Interestingly, in Dickinson Education Association v. Dickinson Public School District, 252 N.W.2d 205 (N.D. 1977), the School District's refusal to

are similarly flawed. Still other cases relied upon by the Association involve private, not public sector labor negotiations, and are not applicable authorities. While the decisions of intermediate appellate courts in *Board of Selectmen v. Labor Relations Com'n,* 7 Mass. App. 360, 388 N.E.2d 302 (1979), and *State Ex Rel. Bd. of Pub. Utilities v. Crow,* 592 S.W.2d 285 (Mo. App. 1979), generally support the Assocation's position, there are some differences between the statutes in those jurisdictions and the Maryland Act. In any event, to the extent that these cases support the Association's position, we simply decline to follow them.[6]

## V

Section 6-408 (b) (1) of the Education Article directs the Board "or at least two of its designated representatives" to meet and negotiate with employee organizations on matters relating to salaries, wages, hours and working conditions. The question whether collective bargaining sessions conducted by representatives of the Board, rather than by the Board itself, constitute "meetings" of a "public body" within the contemplation of the Act was not raised by the Association's pleadings in the declaratory judgment action. Nor was the issue argued before or decided by the trial court. In these circumstances, the question "ordinarily" will not be considered for the first time on appeal. Maryland Rule 885.

The importance of the issue to the timely disposition of this litigation is, however, readily apparent. It is solely a question of law, arguably subsumed within the basic issue presented in the case. Indeed, the Board concedes that if collective bargaining sessions are not within the coverage of the Open Meetings Act, a unilateral decision by the public

negotiate with an employee organization in meetings open to the public was deemed a violation of that state's statutory requirement of good faith bargaining.

**6.** Cases tending to support the Board's position that no conflict exists between the statutory requirement of good faith negotiations and open collective bargaining sessions are Littleton Education Association v. Arapahoe Cty. Sch. Dist., 553 P.2d 793 (Colo. 1976), and Board of School Dir. v. Wisconsin Emp. Rel. Com'n, 42 Wisc.2d 637, 168 N.W.2d 92 (1969).

school employer to negotiate only in public may violate the "good faith" requirement of § 6-408 of the Education Article. To avoid further delay in the ultimate resolution of this case, we shall consider the question, rather than remand under Maryland Rule 871 to permit amendment of the pleadings and for further proceedings.

Where, as here, "representatives" of the Board are authorized by statute, and by Board resolution, to engage in collective bargaining negotiations with employee organizations, they plainly exercise "quasi-legislative" functions under § 8 (i) of the Act because they are involved in the process of approving, disapproving or amending a contract. In so acting, the Board's representatives constitute a "public body," as defined in § 8 (g) of the Act, because they are an entity of two or more persons created or authorized by statute or resolution. Section 9 of the Act provides that its provisions "shall apply to a public body when it is exercising legislative, quasi-legislative or advisory functions," while § 10 requires that "meetings" of public bodies shall be open to the public. The Board's representatives, when convening for the purpose of conducting collective bargaining negotiations with employee organizations, are involved in a "meeting" under § 8 (f) of the Act "for the purpose of considering or transacting public business." We thus conclude that the provisions of the Open Meetings Act are applicable whether it is the Board, or its authorized representatives, that convene to engage in collective bargaining negotiations under § 6-408 of the Education Article.

The trial court's order disposing of the case provided only "that summary judgment in favor of the . . . Board be entered and that the Bill of Complaint for Declaratory Relief of the . . . Association be, and it is hereby dismissed." While it is permissible to grant summary judgment in a declaratory judgment action where there is no genuine dispute of fact involved and the issues presented are solely questions of law, *Balto. Import Car v. Md. Port Auth.,* 258 Md. 335, 265 A.2d 866 (1970), it is improper for the trial court simply to "dismiss" the case without giving a declaration passing upon and adjudicating the issues raised in the proceeding. *Robert*

*T. Foley Co. v. W.S.S.C.,* 283 Md. 140, 389 A.2d 350 (1978). We shall therefore vacate the lower court's judgment and remand the case for the entry of a new judgment in accordance with the views expressed in this opinion.

> *Judgment vacated; case remanded to the Circuit Court for Carroll County for the entry of a declaratory judgment in conformity with this opinion.*
> *Costs to be paid by the appellant.*

*Davidson, J., dissenting:*

Collective bargaining involves a process of exploratory problem solving in which governmental bodies and labor organizations explore and consider a variety of problems to be resolved through compromise. The process of compromise is therefore the essential ingredient of effective and successful collective bargaining.

In my view, collective bargaining in public tends to inhibit if not destroy the collective bargaining process. It suppresses free and open discussion, causes proceedings to become formalized rather than spontaneous, induces rigidity and posturing, fosters anxiety that compromise might look like retreat and, therefore, freezes negotiators into fixed positions from which they cannot recede. Most courts, labor boards, and commentators agree that collective bargaining in public tends to damage the process of compromise necessary for successful collective bargaining. *E.g., Burlington Community School Dist. v. Public Employment Relations Bd.,* 268 N.W.2d 517, 523-24 (Iowa 1978); *Board of Selectmen of Marion v. Labor Relations Comm'n,* 7 Mass.App.Ct. 360, 362, 388 N.E.2d 302, 303 (1979); *State ex rel. Bd. of Pub. Utilities v. Crow,* 592 S.W.2d 285, 290-91 (Mo.Ct.App. 1979); *Talbot v. Concord Union School Dist.,* 114 N.H. 532, 535, 323 A.2d 912, 913-14 (1974); *accord NLRB v. Bartlett-Collins Co.,* 639 F.2d 652, 656 (10th Cir.), *cert.*

*denied,* 452 U.S. 961, 101 S.Ct. 3109 (1981); *Latrobe Steel Co. v. NLRB,* 630 F.2d 171, 176-79 (3d Cir. 1980), *cert. denied,* 454 U.S. 821, 102 S.Ct. 104 (1981); *see Quamphegan Teachers Ass'n v. Board of Directors, School Admin. Dist. No. 35,* Case No. 73-05, April 20, 1973 (Maine Public Employees Relations Board); *Mayor Samuel E. Zoll & The City of Salem, Mass. & Local 1780, Int'l Ass'n of Firefighters,* Case No. MUP-309, December 14, 1972 (Labor Relations Commission); *Washoe County Teachers Ass'n & the Washoe County School Dist.,* Nevada Local Gov't Employee-Management Relations Bd., Case No. A1-045295, May 21, 1976; *Brielle Bd. of Educ. & Brielle Educ. Ass'n,* State of New Jersey PERC, Docket No. CO-77-88-92, June 23, 1977 (Public Employment Relations Commission); *Pennsylvania Labor Relations Bd. v. Board of School Directors of the Bethlehem Area School Dist.* Case No. PERA-C-2861-C, April 11, 1973, GERR 505 (E-1) (Pennsylvania Labor Relations Board, 1973); *City of Sparta & Local 1947-A Wisconsin Council of County & Municipal Employees, AFSCME, AFL-CIO,* Case VIII, No. 19480, DR(M)-68, Decision No. 14520, April 7, 1976 (Wisconsin Employment Relations Commission); *see also* 1 Werne, *Law and Practice of Public Employment Labor Relations* § 15.3 at 266-67 (1974); Committee on State Labor Law, Section of Labor Relations Law, A.B.A., 2 Committee Reports 274 (1975).

In 1968, the Legislature enacted Md. Code (1957, 1969 Repl.Vol.), Art. 77, § 160, the predecessor to Md. Code (1978 & 1981 Cum.Supp.) §§ 6-401 through 6-411 of the Education Article (hereinafter referred to as Public Employment Labor Relations Act). In so doing, the Legislature established that it is the public policy of this State to promote harmonious and cooperative relationships between government and its public school employees by permitting such employees to organize and bargain collectively. The purpose of that Act was to encourage the use of the collective bargaining process in a segment of the public sector.

The majority here holds that the Board can unilaterally determine that collective bargaining sessions shall be con-

ducted in public, a result that it concedes will neither promote harmony nor avoid discord in the collective bargaining process. In reaching its result, the majority fails to recognize that when the Legislature enacted the Open Meetings Act in 1977, Md. Code (1957, 1980 Repl.Vol.), Art. 76A, §§ 7-15, it did not intend that Act to impede the collective bargaining process and, consequently, to destroy harmonious and cooperative relationships between government and its public school employees. Unlike the majority, I find that it is not only possible, but also preferable, to harmonize the Open Meetings Act and the Public Employment Labor Relations Act without violating the express provisions of the former or undermining the purpose of the latter.

Section 10 of the Open Meetings Act requires meetings of public bodies covered by the Act to be open "unless closed in accordance with § 11." Section 11 (a) (8) permits a meeting for the purpose of "conducting collective bargaining negotiations" to be closed. Thus, the Open Meetings Act expressly provides that some collective bargaining sessions may be open and some may be closed.

The Act, however, does not expressly state who should determine whether such sessions are to be open or closed. My view that conducting collective bargaining sessions in public is destructive of the collective bargaining process leads to the conclusion that the purpose of the Public Employment Labor Relations Act can be preserved only if neither party is entitled under § 11 (a) (8) of the Open Meetings Act to determine unilaterally that such sessions should be open. Thus, a harmonious construction of both relevant Acts dictates that under § 11 (a) (8) of the Open Meetings Act, collective bargaining sessions are to be open only when both parties agree. Such a result is consonant with the language of the Open Meetings Act that expressly provides for both open and closed collective bargaining sessions and with the purpose of the Public Employment Labor Relations Act which is to promote harmonious and cooperative relationships between government and its public school employees through the collective bargaining process.

Here the record shows that the Board unilaterally deter-

mined, over the Association's objections, that collective bargaining sessions would be conducted at meetings open to the public. In so doing, the Board violated § 11 (a) (8) of the Open Meetings Act which, when read in harmony with the Public Employment Labor Relations Act, requires that collective bargaining sessions be open only when both parties agree. Under these circumstances, I would reverse the judgment of the trial court without reaching the remaining issue decided by the majority. Accordingly, I respectfully dissent.

Judge Cole authorizes me to state that he joins me in the views expressed herein.