**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2317

September Term, 2012

_____

ALLEN R. DYER

v.

BOARD OF EDUCATION OF
HOWARD COUNTY

_____

Krauser, C.J.,
Hotten,
Berger,

JJ.[1]

_____

Opinion by Berger, J.

_____

Filed:  March 26, 2014

[1]Judge Andrea M. Leahy did not participate in the Court's decision to report this opinion pursuant to Md. Rule 8-605.1

This appeal involves a dispute between the Howard County Board of Education ("the Board") and Allen R. Dyer ("Dyer"), a former member of the Board. On March 3, 2011, a hearing was conducted by the Board's Ethics Panel in response to two complaints that had been filed against Dyer. The hearing was not open to the public. Dyer brought this action in the Circuit Court for Howard County, asserting, *inter alia*, that the Ethics Panel violated the Maryland Open Meetings Act. On appeal, Dyer presents a single question for our review, which we have rephrased as follows:

> Whether the Ethics Panel's March 3, 2011 hearing violated the
> Maryland Open Meetings Act.

For the reasons set forth herein, we answer the question in the negative, and affirm the judgment of the Circuit Court for Howard County.

## FACTS AND PROCEEDINGS

The parties stipulated to an agreed statement of facts, from which we draw primarily[1] in our recitation of the facts as follows:

1.  [The Board] adopted the Howard County Public Schools System Ethics Regulations, in accordance with State Law.

2.  In accordance with the Ethics Regulations, the school board appoints a five-member Ethics Panel from among the residents of the County.

3.  The duties of the Ethics Panel include processing and making determinations on complaints filed by any person alleging violations of the Ethics Regulations and

---

[1] We have omitted references to various attachments.

referring findings regarding complaints to the school board for action.

4. By letter dated December 23, 2010, Andrew Nusssbaum [sic], Esquire, sent a letter to [Dyer], on behalf of the Ethics Panel, informing him that two complaints against him had been filed.

5. The letter from Mr. Nussbaum enclosed a redacted copy of the complaints, a copy of the Ethics Regulations, a copy of the Rules for the Ethics Panel, and a copy of the Rules of Procedure for Hearings Before the Ethics Panel.

6. By letter dated February 15, 2011, Mr. Nussbaum informed [Dyer's] counsel, Harold H. Burns, Jr., Esquire, that a hearing before the Ethics Panel had been scheduled for Thursday, March 3, 2011 beginning at 3:00 p.m.

7. The February 15, 2011[] letter included the following:

> "I would again remind you, your client, the Complainants, and Student Board Member Alexis Adams, to whom copies of this letter are also being sent, that, pursuant to Ethics Regulations, '[a]ll actions regarding a complaint shall be treated confidentially.' I would request that all parties maintain that confidentiality and that nothing regarding this matter be discussed with, or disclosed to, any other individuals."

8. By letter dated February 24, 2011, [Dyer's] counsel, Mr. Burns, wrote to Mr. Nussbaum stating, inter alia, that the complaints did not state any violation of the Ethics Regulations, that the discussion involved political speech protected by the First Amendment, that the Ethics Panel's investigation of the complain[t]s should cease immediately because it infringed on [Dyer's] constitutional right to free speech, and that the

2

proceedings could not be confidential "vis-vis the Board itself."

9. [Dyer] attended the March 3, [2]011 Ethics Panel hearing which was not open to the public and testified under oath.

10. The Ethics Panel hearing was transcribed by a court reporter.

11. On March 10, 2011, at 2:20 p.m., the school board met in open session, ultimately voting 5-3 to close the meeting for the reasons stated in the motion made by Board member Ellen Giles.

12. [Dyer] disagreed with the phrasing of the motion . . . .

13. At the closed session on March 10, 2011, the school board received legal advice regarding release of confidential information in relation to the Ethics complaints.

14. On April 14, 2011, at 2:30 p.m., the school board met in open session, ultimately voting 6-0 to close the meeting for the reasons stated in the motion made by Board member Giles.

\*\*\*

17. The Board of Education of Howard County is a public body as defined by the State Open Meetings Act and is subject to the provisions of that Act.

On April 15, 2011, Dyer filed a complaint in the Circuit Court for Howard County alleging that the March 3, 2011 Ethics Panel hearing violated the Maryland Open Meetings Act. The circuit court held a hearing on November 13, 2012 and denied all relief requested

3

by Dyer. The circuit court's oral ruling was memorialized in a written order dated November 15, 2012. This timely appeal followed.

## STANDARD OF REVIEW

Maryland Rule 8–131(c) governs our review of a non-jury trial, and provides the following:

> When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witness.

"The clearly erroneous standard does not apply to the circuit court's legal conclusions, however, to which we accord no deference and which we review to determine whether they are legally correct." *Cattail Assocs. v. Sass*, 170 Md. App. 474, 486 (2006).

## DISCUSSION

Dyer asserts that the March 3, 2011 hearing by the Ethics Panel of the Howard County Board of Education violated the Maryland Open Meetings Act. Md. Code (1984, 2009 Repl. Vol.) §§ 10-501 - 10-512 of the State Government Article ("SG"). Dyer contends that the Board impermissibly delegated quasi-judicial authority to the Ethics Panel, and therefore, the Ethics Panel had no authority to conduct a hearing on a complaint alleging a violation of ethics regulations. Dyer further asserts that, even if the delegation of quasi-judicial authority is permissible, the Ethics Regulations regarding confidentiality impermissibly abridge free speech in violation of Article 40 of the Maryland Declaration of Rights and the First and

4

Fourteenth Amendments to the United States Constitution. We address each of Dyer's contentions in turn.

## I.

We first consider whether the Maryland Open Meetings Act ("OMA") applied to the March 3, 2011 Ethics Panel hearing. Except for certain circumstances not presented in the instant case, the OMA does not apply to a public body when it is carrying out an administrative function, a judicial function, or a quasi-judicial function. SG § 10-503(a)(1). As we explain below, the OMA did not apply to the March 3, 2011 hearing because the Ethics Panel hearing constituted an administrative function.[2]

Administrative function is defined in the OMA as "the administration of:

(i) a law of the State;
(ii) a law of a political subdivision of the State; or
(iii) a rule, regulation, or bylaw of a public body."

SG § 10-502(b). A 2010 advisory opinion issued by the Office of the Attorney General is instructive on the issue of whether the Ethics Panel hearing constituted an administrative function. We have explained that, "[w]hile not binding . . . the opinions of the Attorney General are, nevertheless, generally entitled to careful consideration." *Scott v. Clerk of Circuit Ct. for Frederick Cnty.*, 112 Md. App. 234, 240 (1996). The Office of the Attorney

---

[2] In addition to the administrative function exception, the parties address whether the Ethics Panel hearing constituted a quasi-judicial function. Because, as discussed *infra*, we conclude the Ethics Panel hearing constituted an administrative function, we need not address whether the Ethics Panel hearing constituted a quasi-judicial function.

General explained that a two-step test applies for determining whether a public body has engaged in an administrative function:

> The Open Meetings Compliance Board, an independent advisory body charged with construing the State OMA, has developed a two-step analysis to determine whether a particular activity is an administrative function. See, e.g., 6 OMCB Opinions 145, 147 (2009); 6 OMCB Opinions 23, 25-26 (2008); see also 86 Opinions of the Attorney General 94, 115-17 (2001). The first step is to evaluate whether the meeting falls within any other function defined in the statute. If it does, the analysis ends because, by definition, the meeting does not involve an administrative function. SG § 10-503(b)(2).[3] If the session does not involve one of the other defined functions, **the second step is to evaluate whether the public body is involved in the administration of an existing law, rule, or regulation (as opposed to the development of new policy). If it is, the meeting likely involves an administrative function and the State OMA does not apply**; if not, the discussion is not an administrative function and the State OMA does apply.

95 Md. Op. Att'y Gen. 152, 155-56 (2010) (emphasis added).

Similarly, the State Open Meetings Compliance Board ("OMCB") has reasoned that ethics panel meetings constitute administrative functions, and are therefore, not subject to the OMA.[4] In a February 24, 1993 opinion, the OMCB determined that a closed meeting of the Ethics Commission of the City of College Park did not violate the OMA. The closed meeting

---

[3] SG § 10-503(b)(2) provides that the OMA applies to a public body when it is meeting to consider granting licenses, permits, as well as when the public body is involved in the consideration of zoning matters.

[4] The OMCB considers alleged violations of the Open Meetings Act and issues written opinions. We note that OMCB opinions "are advisory only." SG § 10-502.4(i)(1). Given the dearth of authority on this issue, however, we find consideration of OMCB opinions to be of some utility.

was held in response to a complaint alleging that certain individuals violated the Ethics Ordinance of the City of College Park. The OMCB reached the following conclusion:

> When the Ethics Commission of College Park sits to hear a complaint, it is administering "a law of a political subdivision of the State" - namely, the city's own ethics law. Therefore, the Commission would be carrying out an "executive function"[5] as defined in the Open Meetings Act.
>
> Because the Act as a whole is inapplicable, the provisions of the Act governing notice to the public and voting prior to the conduct of a closed session themselves do not apply. For these reasons, the Compliance Board finds that the Ethics Commission of College Park did not violate the Open Meetings Act in connection with its closed session on September 2, 1992.

1 OMCB Opinions 93-4 (1993). The OMCB similarly concluded that a closed meeting of the Frederick County Board of Education did not violate the OMA when the Board of Education met to review the findings of its ethics panel. 5 OMCB Opinions 121 (1997). The OMBC explained that, by reviewing findings of the ethics panel, the board "was administering its own regulations adopted pursuant to state statute." *Id.* Accordingly, the OMCB concluded that the board's "discussions involved an executive [now administrative] function outside the scope of the [OMA]." *Id.*

The March 3, 2011 Ethics Panel hearing at issue in the instant case involved the administration of existing ethics regulations and did not involve development of new policy.

---

[5] Prior to October 1, 2006, the State OMA used the term "executive function" rather than "administrative function." The function was renamed in 2006, but the substance of the definition was unchanged. Chapter 584, Laws of Maryland 2006. *See also* 95 Md. Op. Att'y Gen. 152 n. 7.

We adopt the careful analysis set forth in the 2010 Opinion of the Attorney General in holding that administration of existing ethics regulations constitutes an administrative function. Accordingly, the March 3, 2011 Ethics Panel hearing was exempt from the OMA pursuant to SG § 10-503(a)(1).

The Maryland Public Ethics Law provides further support for the confidential nature of the Ethics Board hearing. SG § 15-407 provides that complaint proceedings before the State Ethics Commission are confidential.[6] The Board's ethics regulations and Rules for the

_____

[6] SG § 15-407 provides the following:

> (a) Notwithstanding any other law and except as provided in subsections (b) and (c) of this section, after a complaint is filed:
>
>> (1) the proceedings, meetings, and activities of the Ethics Commission and its employees relating to the complaint are confidential; and
>>
>> (2) information relating to the complaint, including the identity of the complainant and respondent, may not be disclosed by the:
>>
>>> (i) Ethics Commission;
>>> (ii) staff of the Ethics Commission;
>>>
>>> (iii) complainant; or
>>> (iv) respondent.
>
> (b) Except as provided in subsection (c) of this section, the restrictions in subsection (a) of this section apply unless:
>
> (1) the matter is referred for prosecution; or

(continued...)

8

Ethics Panel similarly provide for confidentiality, requiring that all complaints be treated confidentially. The Rules for the Ethics Panel further provide that "[t]he Panel, its staff, the complainant, and the respondent shall not disclose any information relating to the complaint, including the identity of the complainant and respondent, except that the Panel may release information at any time if a release has been agreed to in writing by the respondent, and the identity of the complainant shall be disclosed to the respondent, at the request of the respondent at any time." Due to the confidential nature of Ethics Panel proceedings, the March 3, 2011 hearing was appropriately closed to the public.

Dyer further contends that the Board impermissibly delegated quasi-judicial responsibilities to the Ethics Panel. In support of his assertion, Dyer points to our opinion in *Andy's Ice Cream v. Salisbury*, 125 Md. App. 125 (1999), in which we held that certain delegations by a municipality were improper. This case, however, involves a delegation not by a municipality but by a county board of education. Furthermore, in *Andy's Ice Cream*, we emphasized that the power delegated was "not merely ministerial or administrative." *Id.* at

---

[6] (...continued)
> (2) the Ethics Commission finds a violation of this title.
>
> (c)(1) The Ethics Commission may release any information at any time if the respondent agrees in writing to the release.
>
> (2) On request of the respondent, the Ethics Commission at any time shall disclose the identity of the complainant to the respondent.

9

166. In the instant case, as discussed *supra*, the Ethics Panel exercised an administrative function.

Contrary to Dyer's assertions, county boards of education may delegate functions to representatives. Indeed, the OMA explicitly contemplates that one public body can create another public body. Regarding the definition of a "public body," SG § 10-502 provides that a "public body" is "an entity that:

> (i) consists of at least 2 individuals; and
>
> (ii) is created by:
>
>> 1. the Maryland Constitution;
>> 2. a State statute;
>> 3. a county or municipal charter;
>> 4. a memorandum of understanding or a master agreement to which a majority of the county boards of education and the State Department of Education are signatories;
>> 5. an ordinance;
>> 6. **a rule, resolution, or bylaw**;
>> 7. an executive order of the Governor; or
>> 8. an executive order of the chief executive authority of a political subdivision of the State.

(Emphasis added.) The Court of Appeals addressed the delegation of functions by a school board in *Carroll County Education Association, Inc. v. Board of Education of Carroll County*, 294 Md. 144 (1982). *Carroll County Education Association, Inc.*, *supra*, involved the delegation of quasi-legislative responsibilities to representatives of the school board engaged in collective bargaining negotiations. *Id.* at 155. The Court explained that the

10

representatives were a "public body" as defined in the OMA "because they are an entity of two or more persons created or authorized by statute or resolution." *Id.*

In the instant case, the Board similarly delegated responsibilities to the Ethics Panel. The parties stipulated that the Board appointed members to the Ethics Panel from among the residents of Howard County. The parties further stipulated that the Ethics Panel's duties included "processing and making determinations on complaints filed by any person alleging violations of the Ethics Regulations and referring findings regarding complaints to [the Board] for action." As in *Carroll County Education Association, Inc.*, *supra*, such a delegation is permissible under the OMA.

Dyer's next assertion is that the Board is subject to the "more stringent meeting requirements" found in section 3-704 of the Education Article, Md. Code (2008) ("ED"). Section 3-704 provides, in pertinent part:

> (b) Except for those actions authorized by subsection (c) of this section, all actions of the county board shall be taken at a public meeting and a record of the meeting and all actions shall be made public.
>
> (c) The county board may take actions in closed session in accordance with § 10-508 of the State Government Article, including action to close a meeting.

ED § 3-704 applies, however, only to actions of the county board. The Ethics Panel is not "the county board," and accordingly, ED § 3-704 is inapplicable.

**II.**

Dyer asserts that the Ethics Regulations regarding confidentiality impermissibly abridge free speech in violation of Article 40 of the Maryland Declaration of Rights and the First and Fourteenth Amendments to the United States Constitution. Critically, Dyer did not raise this issue before the circuit court.

In support of his position that we should consider the constitutional issues, Dyer argues generally that a citizen enforcing the OMA cannot waive a First Amendment argument, but cites no authority in support of this assertion. Dyer further argues that the First Amendment issue was raised in his complaint, pointing to the following language: "Respondent also demands that [the Ethics Panel] proceedings in their entirety be open to the public so that the voters of Howard County may judge for themselves whether these Complaints were brought in good faith and whether these proceedings were pursued in good faith or whether the Complaints and proceedings together are nothing more than a witch-hunt brought for the sole purpose of silencing Respondent and impeding him from carrying out his duties." We fail to see how such language presents a First Amendment argument with sufficient specificity. Dyer also points to language in a February 24, 2011 letter sent from Dyer's former attorney to the Ethics Panel's attorney, which made reference to protected speech under the First Amendment and was attached as an exhibit to Dyer's complaint.[7]

---

[7] In the February 24, 2011 letter, the issue of constitutionally protected speech was discussed as a defense to the ethics complaints themselves. No mention was made of the
(continued...)

12

This issue, however, was never argued before the circuit court, nor is there any indication that the circuit court considered or decided the First Amendment issue or the Article 40 claim. Maryland Rule 8-131(a) provides that an appellate court normally will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court." *Univ. Sys. of Maryland v. Mooney*, 407 Md. 390, 400 (2009). Accordingly, we will not address the constitutional issues on appeal.

> **JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[7] (...continued)
unconstitutionality of the confidentiality requirements of the Ethics Regulations, which is the issue raised by Dyer in this appeal.