696 So.2d 427 (1997)
Corinne FREEMAN and Barbara J. Crockett, Appellants,
v.
TIMES PUBLISHING COMPANY, a Florida corporation, Appellee.
No. 96-03129.
District Court of Appeal of Florida, Second District.
June 27, 1997.
John W. Bowen, Largo, for Appellants.
George K. Rahdert, Thomas H. McGowan, and Alison M. Steele of Rahdert, Anderson, McGowan & Steele, P.A., St. Petersburg, for Appellee.
ALTENBERND, Judge.
Two members of the Pinellas County School Board (the Board), in their individual capacities, appeal the trial court's order permanently enjoining the Board from holding closed door meetings when discussing issues related to a long-pending desegregation lawsuit. We affirm the trial court's order while limiting, in part, the scope of the injunction.
In 1964, a federal lawsuit was filed to integrate the Pinellas County school system. Bradley v. Board of Pub. Instruction of Pinellas County, Case No. 64-98-Civ.-T (M.D.Fla.). In 1971, the court entered a final judgment in Bradley, retaining jurisdiction to enter additional orders to assure compliance with its judgment. In the twenty-six years since the entry of that final judgment, the parties have executed various stipulations and the federal court has amended the judgment in order to fulfill its original mandate.
In April 1996, the parties to the desegregation lawsuit discussed the need to modify the boundaries of a particular school zone to remain in compliance with the federal mandate. The Board's attorney wished to address aspects of the modifications with the Board in private to establish a negotiating posture. If the attorney had been representing a private business corporation, such a closed session would have been the normal and customary method to discuss such negotiating options.
Prior to 1993, Florida's Sunshine laws recognized little, if any, attorney-client privilege for a governmental agency like the Board when engaged in settlement discussions. See generally School Bd. of Duval County v. Florida Publishing Co., 670 So.2d 99 (Fla. 1st DCA 1996) (explaining earlier limitations under Sunshine laws). In 1993, the legislature created a procedure for closed door sessions, allowing agencies and their attorneys *428 to discuss "settlement negotiations or strategy sessions related to litigation expenditures" in private, so long as the private sessions were fully transcribed by a court reporter. § 286.011(8), Fla. Stat. (1995). The Board and its attorney concluded that section 286.011(8) permitted meetings in private to discuss the negotiations in this desegregation case. The Board's interpretation of the statute was not unreasonable and its decision was clearly made in good faith. There was no existing precedent to guide its decision. The St. Petersburg Times filed this action for declaratory and injunctive relief to test the validity of the Board's interpretation. The trial court entered a judgment and injunction in favor of the Times.
Because the Board and a majority of its members elected not to appeal the trial court's order and, thus, have agreed to abide by that order, this is not a good case in which to establish the meaning of "settlement negotiations." Some of the trial court's comments when announcing its decision may place too great an emphasis upon the idea that settlement negotiations, in order to be exempt, must be negotiations to reach a final and permanent settlement. The court's written order, however, does not incorporate these statements.
We seriously doubt that the legislature intended to address this type of desegregation order when it used the term "settlement negotiations" in section 286.011(8). The final judgment in the federal litigation was entered a generation ago. The lawsuit remains pending, but not in a posture where it can be settled like a typical tort or contract action is settled either before judgment or while pending on appeal. Even if the lawsuit had never been filed, the Board would still have an obligation to adjust school boundaries to achieve a healthy mix of students. Such changes would be discussed at public meetings. We conclude that Board meetings discussing methods to achieve continuing compliance with the federal mandate are not within the statutory exception for "settlement negotiations." This conclusion includes those meetings in which members consider various solutions subject to negotiation with the plaintiffs in the federal lawsuit. To that extent we approve the permanent injunction.
The injunction, however, contains language suggesting that all future Board meetings discussing any aspect of the Bradley case must be open to the public. There remains the possibility that the Board might need to discuss strategies related to litigation expenditures in the federal case. For example, if the Board were ordered by the federal court to pay attorneys' fees to the plaintiffs, it is possible that a closed door negotiation session might be authorized. See Brown v. City of Lauderhill, 654 So.2d 302 (Fla. 4th DCA 1995) (city attorney may meet with commissioners in private to discuss claim for attorneys' fees). One can at least hope that a day may come when this lawsuit is no longer necessary to achieve integration in the schools. At that time, we cannot rule out the possibility that some final issues might be appropriately discussed in private. Accordingly, we limit the permanent injunction to require public meetings for all sessions that discuss any method or options to achieve continuing compliance with the longstanding federal mandate. Obviously, if the Board decides that some matter related to the Bradley litigation is outside this permanent injunction, it still must comply with the procedures in section 286.011(8) for conducting a closed door session. Those procedures will allow the Times or other interested parties to challenge the Board's decision to conduct a private session.
Affirmed as modified.
THREADGILL, C.J., and BLUE, J., concur.