Dear Mr. Ansbacher:
As board attorney for the Florida School for the Deaf and the Blind, you have asked for my opinion on the following question:
Pursuant to section 286.011(8), Florida Statutes, may qualified interpreters attend collegial body executive sessions to interpret for hearing impaired board members?
You have asked how the Americans With Disabilities Act requirements for auxiliary hearing aids, including qualified interpreters, apply to the limitations contained in section 286.011(8), Florida Statutes, placed on attendees at a collegial body executive session.
Section 286.011(1), Florida Statutes, requires governmental boards or commissions to conduct their business at open public meetings. Limited exceptions have been created by the Legislature for attorney-client discussions.[1] Prior to the enactment of section 286.011(8), no attorney-client privilege for governmental agencies was recognized and the Sunshine Law had been construed to apply to all meetings between governmental agencies and their attorneys conducted for the purpose of discussing settlement of pending litigation.[2] Section 286.011(8), Florida Statutes, requires that the discussion relate to "pending litigation to which the entity is presently a party" and that the subject matter of any such meeting "shall be confined to settlement negotiations or strategy sessions related to litigation expenditures."[3] Thus, the exemption provides a governmental entity's attorney the opportunity to receive necessary direction and information from the governmental entity regarding pending litigation.[4]
This office recognized in Attorney General Opinion 95-06:
"Section 286.011(8), Florida Statutes, does not create a blanket exception to the open meeting requirement of the Sunshine Law for all meetings between a public board or commission and its attorney. The exemption is narrower than the attorney-client communications exception recognized for private litigants. Only discussions on pending litigation to which the public entity . . . is presently a party are subject to its terms. Such discussions are limited to settlement negotiations or strategy sessions related to litigation expenditures."[5]
In applying section 286.011(8), Florida Statutes, Florida courts have held that the Legislature intended a strict construction of the exemption. In School Board of Duval County v. Florida PublishingCompany, [6] the district court concluded that the exemption's purpose was to permit "any governmental agency, its chief executive and attorney to meet in private if the agency is a party to litigation and the attorney desires advice concerning settlement negotiations or strategy." Reading the exemption narrowly, this office, in Attorney General Opinion 95-06, construed section 286.011(8), Florida Statutes, to preclude the temporary adjournment and reconvening of meetings in order for members who are attending such a session to leave the room and consult with others outside the meeting. Similarly, the courts in School Board of Duval County, supra, and in Zorc v. City of Vero Beach, [7] determined that the attendance of administrative staff and consultants at a closed meeting to discuss litigation strategy or settlement negotiations was a violation of the Sunshine Law.
The legislative history of the exemption indicates that it was intended to apply only to discussions rather than to final action relating to settlement negotiations or litigation expenditures.[8] As was noted in the legislative analysis of the original bill enacting section 286.011(8), Florida Statutes, "[n]o final decisions on litigation matters can be voted on during these private, attorney-client strategy meetings. The decision to settle a case, for a certain amount of money, under certain conditions is a decision which must be voted upon in a public meeting."[9] Thus, as the Florida Supreme Court held in Zorc v. City of Vero Beach, "[t]he settlement of a case is exactly that type of final decision contemplated by the drafters of section 286.011(8) which must be voted upon in the sunshine."[10]
Your question relates specifically to the attendance of qualified interpreters for the use and benefit of the two hearing impaired members of the Florida School for the Deaf and the Blind. Section 1002.36(4)(a), Florida Statutes, creates a Board of Trustees for the Florida School for the Deaf and the Blind:
"There is hereby created a Board of Trustees for the Florida School for the Deaf and the Blind which shall consist of seven members. Of these seven members, one appointee shall be a blind person and one appointee shall be a deaf person. Each member shall have been a resident of the state for a period of at least 10 years. Their terms of office shall be 4 years. The appointment of the trustees shall be by the Governor with the confirmation of the Senate. The Governor may remove any member for cause and shall fill all vacancies that occur."
Thus, the Legislature has required that hearing impaired persons be appointed to serve on the board of trustees.
While this office does not interpret federal law, as you have noted, the Americans with Disabilities Act of 1990 (ADA)[11] was enacted by Congress "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities[.]"[12] Public entities subject to regulation under the act include "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]"[13] Thus, I have no doubt that the Florida School for the Deaf and the Blind comes within the scope of the ADA.
Section 12132 of the Act provides:
"Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."
The Code of Federal Regulations, which codifies the provisions of the ADA, requires state agencies to provide equal access and equally effective services to persons with disabilities.[14] To that end the federal regulations provide that "[a] public entity shall take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others."[15] To accomplish this, public entities are required to "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate" in activities conducted by the public entity.[16] For purposes of the ADA, auxiliary aids and services include qualified interpreters.[17] Thus, the Americans with Disabilities Act treats qualified interpreters as the functional equivalent of telephone handset amplifiers, assistive listening devices, closed caption decoders, telecommunications devices for deaf persons, or other methods of making aurally delivered materials available to those with hearing impairments.[18]
Florida courts, in both the Zorc case and the Duval County School Board case, have rejected claims that administrative staff may attend closed meetings under section 286.011(8), Florida Statutes. However, my reading of the Americans with Disabilities Act of 1990 leads me to conclude that qualified interpreters are in the nature of the eyes and ears of board members with disabilities. As such, they allow these board members to participate in board business on an equal footing with their fellow board members in providing necessary direction to the board's attorney during closed meetings on litigation.
Therefore, it is my opinion that a qualified interpreter may attend collegial body executive sessions to interpret for hearing impaired board members of the Florida School for the Deaf and the Blind without violating the terms of section 286.011(8), Florida Statutes.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See s. 1, Ch. 93-232, Laws of Fla.
[2] See, e.g., Neu v. Miami Herald Publishing Company, 462 So. 2d 821
(Fla. 1985).
[3] Section 286.011(8), Fla. Stat., requires:
"Notwithstanding the provisions of subsection (1), any board or commission of any state agency or authority or any agency or authority of any county, municipal corporation, or political subdivision, and the chief administrative or executive officer of the governmental entity, may meet in private with the entity's attorney to discuss pending litigation to which the entity is presently a party before a court or administrative agency, provided that the following conditions are met:
(a) The entity's attorney shall advise the entity at a public meeting that he or she desires advice concerning the litigation.
(b) The subject matter of the meeting shall be confined to settlement negotiations or strategy sessions related to litigation expenditures.
(c) The entire session shall be recorded by a certified court reporter. The reporter shall record the times of commencement and termination of the session, all discussion and proceedings, the names of all persons present at any time, and the names of all persons speaking. No portion of the session shall be off the record. The court reporter's notes shall be fully transcribed and filed with the entity's clerk within a reasonable time after the meeting.
(d) The entity shall give reasonable public notice of the time and date of the attorney-client session and the names of persons who will be attending the session. The session shall commence at an open meeting at which the persons chairing the meeting shall announce the commencement and estimated length of the attorney-client session and the names of the persons attending. At the conclusion of the attorney-client session, the meeting shall be reopened, and the person chairing the meeting shall announce the termination of the session.
(e) The transcript shall be made part of the public record upon conclusion of the litigation."
[4] See Op. Att'y Gen. Fla. 04-35 (2004).
[5] And see School Board of Duval County v. Florida PublishingCompany, 670 So. 2d 99 (Fla. 1st DCA 1966), agreeing with Op. Att'y Gen. Fla. 95-06 (1995), and quoting the opinion extensively. See also Op. Att'y Gen. Fla. 04-35 (2004) (application of s. 286.011(8) limited to pending litigation; it does not apply when no lawsuit has been filed even though the parties involved believe litigation is inevitable).
[6] 670 So. 2d 99 (Fla. 1st DCA 1996). And see City of Dunnellon v.Aran, 662 So. 2d 1026 (Fla. 5th DCA 1995); Zorc v. City of VeroBeach, 722 So. 2d 891 (Fla. 4th DCA 1998).
[7] Supra at n. 6.
[8] See Staff of Florida House of Representatives Committee on Governmental Operations, CS/HB 491 (1993) Final Bill Analysis Economic Impact Statement p. 2 (Florida State Archives).
[9] Id. at p. 3.
[10] Zorc v. City of Vero Beach, 722 So. 2d 891 at 901. See alsoFreemen v. Times Publishing Company, 696 So. 2d 427 (Fla. 2d DCA 1997) (discussion of methods or options to achieve continuing compliance with a long-standing federal desegregation mandate [such as whether to modify the boundaries of a school zone to achieve racial balance] must be held in the sunshine.) Compare Bruckner v. City of Dania Beach,823 So. 2d 167,172 (Fla. 4th DCA 2002) (closed city commission meeting to discuss various options to settle a lawsuit involving a challenge to a city resolution, including modification of the resolution, authorized because the commission "neither voted, took official action to amend the resolution, nor did it formally decide to settle the litigation") andBrown v. City of Lauderhill, 654 So. 2d 302, 303 (Fla. 4th DCA 1995) (closed-door session between city attorney and board to discuss claims for attorney's fees, authorized).
[11] 42 USCS s. 12101 et seq.
[12] 41 USCS s. 12101(b).
[13] 42 USCS s. 12131(1)(B).
[14] 28 CFR s. 35.130.
[15] 28 CFR s. 35.160(a).
[16] 28 CFR s. 35.160(b)(1).
[17] 28 CFR s. 35.104 and defining "qualified interpreter" to mean "an interpreter who is able to interpret effectively, accurately, and impartially both receptively and expressively, using any necessary specialized vocabulary."
[18] See 28 CFR s. 35.104 defining "auxiliary aids and services."